MABELLE BENNETT *v.* JOHN ROBERTSON.

February Term, 1935.

Present: POWERS, C. J., MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed March 4, 1935.

204

*Finn & Monti* for the defendant.

*J. Ward Carver* for the plaintiff.

SHERBURNE, J. This action grows out of an automobile accident on the cement highway in Hartland on September 1, 1930. At that time the surface of the highway consisted of a new 18-foot pavement with loose gravel shoulders. The plaintiff as a guest of her husband was traveling southerly in a car driven by him, when they overtook a car operated by the defendant. After following this car for a time, Mr. Bennett sounded his horn to go by and defendant's car, which had been traveling in the center of the road, pulled over to the right of the center, whereupon Mr. Bennett turned his automobile to the left and attempted to pass on his left-hand side of the highway. When partly by, the left front end of defendant's car came into violent contact with the right running board and right rear fender of the Bennett car. The evidence was conflicting as to the cause of the collision. Plaintiff's evidence tended to show that the defendant, without warning, attempted to drive back into the center of the road, and that in so doing his car hit the Bennett car while that car was well over on its left of the center of the road. Her witnesses testified to seeing a skid mark on the cement at the point of contact. This mark was described as being from one to three feet to the left of the center of the road. Her evidence tended to show that the Bennett car was thrown out of control; that the left front wheel went off the pavement onto the soft left shoulder in a little over a car's length; that the driver pulled it back and it curved partly over the center of the road, and, as a result of his trying to turn it back so as not to get in front of the other car, it again went off the pavement onto the left shoulder; and that when he again attempted to turn the car back upon the road it rolled completely over, and finally landed on its four wheels entirely off, and facing, the road, near or against a telephone pole located about 4 feet to the left of the road and about 250 feet from the point of collision with defendant's car. Verdict and judgment were for the plaintiff and the case comes here upon defendant's exceptions.

Chester Bennett, plaintiff's husband, upon cross-examination testified that he had been traveling about 25 to 30 miles per hour, and that when he turned out to pass he speeded up about five miles faster, and that after the collision he attempted to stop and put on his brake gradually, and his car was

out of control. Then followed the following questions and answers in further cross-examination:

"Q. Assuming you had applied your brake heavily, could you have stopped your car?

A. Why, I presume so.

Q. If that was so why didn't you do it?

A. Well, my car was out of control, I was trying to keep between the road, I couldn't.

Q. With your car out of control and you had pressed your brake heavily couldn't you have stopped it?

A. Well, I couldn't say.

Q. What is your judgment about it?

A. Well, I don't know, Jack.

Q. Were your brakes in good condition?

A. Why, yes, the car had been inspected.

Q. At that 30 to 35 miles an hour under normal conditions, how far do you travel before you stop?

Mr. Carver: Under what condition, if the Court please?

A. I don't know.

The Court: Yes, we think you should include the conditions, it would make a difference what they were.

Q. You stated yesterday that you traveled anyway 160 to 180 feet, and probably more, that is so, isn't it, after the cars contacted?

A. I said I didn't know, I couldn't give you the exact measurement, because I didn't take none.

Q. At 30 to 35 miles an hour, and in that distance you were on the cement most of the time, weren't you?

A. No, I was on and off.

Q. But mostly you were on?

A. My left side was off three different times.

Q. But just for an instant?

A. I should imagine so, I don't know how long it was.

Q. And on these occasions when you came back on the cement, if you had applied your brake heavily you probably could have stopped, isn't that so?

A. I don't know.

Q. What do you think?

A. I don't know what would have taken place.

Q. You didn't try to?

A. Yes, I applied my brake, but probably didn't apply it hard, I applied it, of course, naturally.

Q. If you had applied it further you would have stopped?

A. I don't know.

Q. But you didn't apply your brake hard?

A. Yes, I applied it, sure.

Q. Not hard?

A. I don't know how hard.

Q. Could you have applied it harder than you did apply it?

A. I don't know. I don't think so.

Q. Traveling that distance you say you traveled, couldn't you have stopped your car if you had applied your brakes hard?

Mr. Carver: I object to that question, that is the same question that was objected to before and the Court ruled on.

The Court: You should have the conditions.

Q. I amend the question, the conditions under which you were traveling at that time?

Mr. Carver: I object to that question, that is not a proper question.

The Court: No, the question should state the conditions.

Q. All right, Mr. Bennett, as you were traveling along there at the speed you state you were traveling, after your car contacted with the Robertson car and during the time you were traveling that distance from one side of the road to the other, if you had applied your brake good and stiff couldn't you have stopped?

Mr. Carver: I object to that question, I say that is not a proper question in cross-examination.

The Court: We will exclude it, and defendant may have an exception."

It is apparent that the last question still fails to state all the conditions. Moreover, the error, if any, was harmless as the cross-examiner had already gotten substantially what his question called for. This exception is not sustained. The defendant, in contending that the plaintiff is limited to the objections made below, overlooks our frequently repeated rule, that this Court may sustain a ruling of the trial court upon any legal grounds, even though that court may have based its ruling upon other grounds. *Niles* v. *Rexford,* 105 Vt. 492, 493, 494, 168 Atl. 714.

Because of the context we next take up an exception to the charge. The defendant excepted "to the failure of the court to charge the jury that if they find that plaintiff's injuries were occasioned solely by the failure of Chester Bennett to handle his automobile properly after the contact between his automobile and the defendant's automobile, then in such case the jury must find the defendant not guilty." Under this exception the defendant raises the question of an efficient intervening cause.

A situation in many respects similar was recently before us in *Beatty* v. *Dunn,* 103 Vt. 340, 154 Atl. 770, 771. As the same general principles of law are applicable, we quote from page 343, omitting the authorities there cited: "When negligence is established, liability attaches for all the injurious consequences that flow therefrom until diverted by the intervention of some efficient cause that makes the injury its own, or until the force set in motion by the negligent act has so far spent itself as to be too small for the law's notice. The difficulty in applying this rule often lies in determining what is an 'intervening cause' therein referred to. The answer to this question is to be found in the character of the intervening act. * * * If this, itself, is 'a natural and proper result of the original negligence, it will not necessarily prevent a recovery thereon.' Otherwise it will. Such an efficient intervening cause, in order to stand as the responsible cause of the ultimate

result, must be a new and independent force or agency breaking the chain of causal connection between the original wrong and that result. If that result is merely accelerated by the new cause, the chain is not broken. Thus it is that the negligence of a third person may or may not amount to an efficient intervening cause. If it is something that, in the eye of the law, the person charged was bound to anticipate, the causal connection is not broken; otherwise the chain of causation is broken.''

We have already, by a general statement and by extended quotations from Chester Bennett's testimony, recited plaintiff's version of how the accident happened and the subsequent events. Omitting defendant's explanation of the cause of the accident, his evidence tended to show that the Bennett car stayed entirely upon the paved surface of the road for 200 feet or more beyond the point of collision, traveling from one side to the other, before it went off the left side and tipped over.

Owing to the distance traveled before the final upset, it might have been possible for the jury, under proper instructions and acting reasonably, to have decided that the force set in motion by the defendant had spent itself, and that, allowing sufficient time for Bennett to recover from the sudden peril which the collision may have thrust upon him, he would have averted the final consequences had he acted reasonably. Under such circumstances the plaintiff's injuries would have been occasioned solely by the intervening negligence of her husband.

The court charged: ''Negligence in order to be actionable must be the proximate cause of the injury complained of. Now by 'proximate cause' we mean such a cause as from which the accident naturally and reasonably followed as a result of it. It is such a cause as ought reasonably to be expected by a prudent man to cause some injury to another. It is such a cause as without which this accident would not have occurred when, where and as it did.'' Also: ''If in the consideration of the evidence in this case you should believe that the driver of the Bennett car was negligent, that does not preclude the plaintiff from recovering in this action, provided that you also find the defendant was guilty of some negligence that contributed to this accident as a proximate cause of it, and that the plaintiff herself was free from contributory negligence. That is, if the driver of each of these cars was negligent, under

such circumstances the plaintiff is entitled to recover, provided you find she was free from contributory negligence.''

This charge did not call the jury's attention sufficiently to the principles of law we have mentioned. The jury might well have understood that if the defendant negligently caused or contributed to the collision with the Bennett car he was necessarily liable for plaintiff's injuries. The defendant was, therefore, entitled to an instruction according to the tenor of his exception, since the issues made by the evidence called for it, and the failure to give it was prejudicial error. Although there was no request for this instruction, it was the duty of the trial court to instruct the jury upon every essential part of the case; and an exception to the failure to charge as to such matters, though not requested, is well taken. *Clark* v. *Demars,* 102 Vt. 147, 151, 146 Atl. 812; and cases there cited.

 The defendant offered to read from the transcript of a former trial portions of the testimony given by the plaintiff and by her witnesses, Chester Bennett and T. E. Atkins, saying that this evidence at the former trial was evidence of the fact and that he not only offered these parts of their testimony as evidence of the fact, but also as impeaching testimony. This offer was excluded subject to exception. When his attention was called to his former testimony Bennett had admitted that he had so testified, so there was no occasion to read his former testimony. Atkins' attention had not been called to his former testimony and he had not been given an opportunity to admit or deny that he so testified. As no foundation had been laid his former testimony was inadmissible. The portion of plaintiff's testimony offered had to do with her statement at the former trial that she ''took a few osteopathic treatments.'' At this trial she testified that she thought she took about two such treatments a week for about six months. When her attention was called to her former testimony she said: ''I suppose I said I took treatments, I don't know how many I said.'' When asked if whatever answer she gave then was true, she replied: ''I guess so.'' If material and a proper offer had been made, this statement should have been received. Nothing has been pointed out, however, to show that this was not a collateral matter. No harm appears.

 As applicable to the foregoing, our rule is, that a witness, not a party, may be impeached by giving in evidence

statements made by such witness, at a former trial or elsewhere, which are inconsistent with his testimony, the foundation of such impeachment having first been laid by. calling the witness' attention to the claimed statement, and questioning him about it. Such statements are impeaching statements only, and, where the witness is not a party, are not evidence to prove the fact to be as stated. *Robinson* v. *Leonard,* 100 Vt. 1, 5, 134 Atl. 706; *In re Claflin's Will,* 75 Vt. 19, 23, 52 Atl. 1053, 58 L. R. A. 1061; *Law* v. *Fairfield,* 46 Vt. 425, 431. In the case of a party, however, no foundation need be laid. The statements made by such a one are evidence of the fact. *Robinson* v. *Leonard, supra; Coolidge* v. *Ayers,* 77 Vt. 448, 453, 61 Atl. 40.

The defendant also excepted ''to the failure of the court to charge that any discrepancy between the statement of witnesses at the former trial of this cause and their testimony at the present trial should be resolved in favor of their earlier testimony, the transaction being fresher in their minds, unless the testimony in the later trial is corroborated.'' Along the same line the defendant took a further exception to the charge as follows: ''The defendant excepts to the charge of the court in words to this effect: 'That the jury cannot consider evidence given by a witness at a former trial as evidence in this case.' We say the rule is that the jury can take the evidence given by a witness at a former trial which has been introduced in evidence in this case as evidence of the facts set forth in the evidence given at the former trial.'' These exceptions are taken care of by what we have said. This is not a case where the testimony at a former trial was offered because of the absence of the witness at the present trial.

The court charged upon positive and negative testimony as follows: ''There is also another class of evidence introduced in this case known as positive and negative testimony. For example: Certain witnesses have testified to seeing a certain mark in the highway near the scene of this accident. Now as a general rule, positive testimony has more weight than negative testimony, that is, assuming the credibility of the witnesses testifying to be equal, because if you find that a certain witness who has testified to seeing the mark is truthful and has seen such mark, of course that convinces you that the mark was there. The mark might have been there and some witness who says he did not see it—the fact that the witness did not

see it is not conclusive as to whether the mark is there or not. But after all, gentlemen, the weight to be given to the testimony of these witnesses, this positive and negative testimony is for you to determine." The defendant excepted to this as applied to the mark, "because we say that this rule does not apply to the testimony of witnesses who stated that they looked over the highway at the place where the mark was and saw none, as for example, Inspector Gregory."

The distinction made by the court has long been recognized in this State. *Seviour's Admr.* v. *Rutland R. R. Co.*, 88 Vt. 107, 111, 91 Atl. 1039, 1040; *Bates* v. *Cilley*, 47 Vt. 1; *Farmers', etc., Bank* v. *Champlain Transp. Co.*, 23 Vt. 186, 56 A. D. 68. As said in the Seviour Case: "The propriety of charging it depends upon circumstances. To give the instruction in some cases might be legal error." Wherever it can be perceived that a positive witness is guilty of perjury unless his statement is true, while a negative witness may be honestly mistaken, the issue should be found in favor of the former if the witnesses are of equal credibility. 10 R. C. L. 1010; *Bates* v. *Cilley, supra.* This is a helpful formula in determining whether the charge used should have been given. Several witnesses testified to seeing the skid mark. There was no chance here for an honest mistake. On the other hand, although Chester Bennett testified to pointing out this mark to Gregory, the latter testified that all that Bennett indicated to him was the relative point of location where the two cars came in contact, approximately on the center line of the highway, and that he didn't try to point out any mark to the left of the center of the highway. It is apparent from Gregory's testimony as to the tracks he found in the highway leading to where the two cars left the road that he thought the cars collided in the center, or to the right of the center, of the highway. As the mark, if there, was from one to three feet to the left of the center of the highway, and possibly a little north or south of the point where he decided the cars came together, it would have been possible for him to have made an honest mistake as to the existence of the mark, although he looked for marks upon the highway in that vicinity. This exception is not sustained.

The defendant excepted "to the charge of the court concerning the acts of Mr. Chester Bennett in an emergency, because there was no such emergency declared upon, and the only issue

presented by the plaintiff's complaint was that of the defendant driving to the left of the defendant's center of the highway and causing the damages claimed." Defendant quotes from *Buck, Admr.* v. *Rutland R. R. Co.*, 101 Vt. 282, 284, 143 Atl. 297, 298, where it states that it is a familiar rule of pleading that the acts or omissions constituting the negligence complained of must be averred in traversable form, and that recovery can be had only for the negligence so charged. "This rule requires one who would avail himself of the 'last clear chance' doctrine to allege the facts which gave rise to the duty on the part of the defendant to act for his protection after the latter discovered, or ought to have discovered, the peril into which the former's negligence had led him." Defendant then says: "The above rule being true, we are unable to see why it should not have the same force and effect in this case with respect to the emergency doctrine so as to cause the plaintiff to aver facts which would give rise to the duty on the part of the defendant to anticipate that his conduct would place plaintiff's driver in a position of sudden peril and thus minimize his conduct after the contact to such an extent that he would be thus excused from an act that would otherwise be negligent and wrongful. In the absence of a proper pleading of the facts required to make this issue, the defendant had no notice that this issue was to be made and no opportunity to prepare for it before trial and was suddenly faced with this issue by the charge given."

There is a distinction between the two situations. The Buck Case simply states what is necessary to allege to constitute a charge of negligence as applied to that particular situation. Here we are talking about the result of negligence. It is well established with us that on the question of what is negligence, it is material to consider the consequences that a prudent man might reasonably have anticipated. But when negligence is once established, that consideration is wholly immaterial, on the question of how far it imposes liability. *Woodcock's Admr.* v. *Hallock*, 98 Vt. 284, 290, 127 Atl. 380. If defendant negligently collided with the Bennett car, it was not necessary, in order to establish his liability for the consequences, that he should have anticipated that Mr. Bennett would have been placed in a position of sudden peril.

The "emergency" doctrine is merely the application of the prudent-man rule. The law appreciates that one, who

through no fault of his own, is confronted with a sudden peril, may do some things which, after it is all over, may seem to have been improper or even foolish. It gives him a reasonable opportunity to recover from the shock naturally resulting from such a situation, and affords him a reasonable opportunity to regain control of himself and his car, before he can be charged with negligence. *Beatty* v. *Dunn, supra.* Under such circumstances he is not negligent if he does what a prudent man would or might have done. *Hatch* v. *Daniels,* 96 Vt. 89, 95, 117 Atl. 105.

 Had the plaintiff been the driver of her car she would not have had to allege the facts that constituted her due care and caution. *Winifred Brothers' Admr.* v. *Rutland R. R. Co.,* 71 Vt. 48, 50, 42 Atl. 980. Consequently she would not have had to allege that the degree of care demanded of her was lessened by a sudden peril. But as her husband was the driver and she was his guest, she did not have to allege or prove due care on his part as to the cause of the collision; all that she had to prove was, that defendant's negligence was at least a contributing proximate cause of her injuries, and as to the latter, as we have seen, it was very material to show that her husband acted with due care after the collision. This exception is not sustained.

Several other exceptions were taken, but as it is unlikely that similar questions will be raised at another trial, we do not consider them.

*Judgment reversed, and cause remanded.*