ENTERPRISE GARNETTING CO. *vs.* WILFRED J. FORCIER, *C. T.*

AUGUSTIN A. H. FEALHABER *vs.* SAME.

DECEMBER 23, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

CONDON, J. These are actions of the case for nuisance. The real defendant is the city of Woonsocket. The cases were tried together in the superior court and a verdict for the plaintiff was returned by the jury in each case. Defendant thereupon moved for a new trial which was granted. Each plaintiff excepted to that ruling by the trial justice and the cases are now here on such exceptions. We shall hereinafter treat these as a single exception by one plaintiff, except in our consideration of the damages.

Plaintiff contends that the trial justice misconceived some of the evidence, and also that he failed, in weighing the evidence, to distinguish between that which was positive and that which was merely negative. Defendant on the other hand contends that the trial justice did not err in those respects but, on the contrary, properly exercised his independent judgment in setting aside the jury's verdicts, and that his decision should not be disturbed unless it is clearly wrong.

On August 18, 1935 plaintiff's property was damaged by fire. This property consisted of two buildings containing valuable machinery and stock. The buildings belonged to plaintiff Fealhaber and the machinery and stock to plaintiff Enterprise Garnetting Company, hereinafter referred to as plaintiff company. These buildings were situated in the city of Woonsocket, off Cumberland Hill road, approximately 250 feet distant from a public dump which, according to the undisputed testimony, was frequently afire, and on several occasions previous to August 18, 1935 required the attention of the fire department. One such occasion was August 17, 1935 when the fire department was called to the dump at

2:15 a. m. and was there one hour and a half extinguishing a fire. Later at 8:10 a. m. on the same day it was again called and the firemen spent over eight hours extinguishing a fire there.

Plaintiff alleged that the fire which destroyed his property originated in this dump, spread to combustible rubbish littered over the area between his buildings and the dump, and ignited his buildings. He further alleged that this was a public dump, maintained by the city of Woonsocket, which the city was obligated to supervise in such a manner that it would not become dangerous to his property. This, he alleged, the city failed to do but permitted the dump to remain for a long time in such a dangerous condition that it became a peril and a hazard amounting to a nuisance for which the city was liable.

The trial in the superior court proceeded on the theory of a nuisance and evidence was presented in support of the allegation that the city created and maintained the dump in a dangerous condition. Defendant raised several issues seeking to avoid responsibility on that ground but the only issue with which we are concerned, on the question of liability, is whether or not a fire started in the dump on August 18, 1935 and ignited the plaintiff's buildings. This was the only issue, on defendant's liability for the fire, which was briefed and argued at the hearing in this court, and it is the only issue which the trial justice discusses in his rescript as not having been proved by the weight of the credible evidence. On that view he granted defendant a new trial.

The trial justice found, in effect, that twenty firemen had testified there was no fire between the dump and plaintiff's buildings. He also found, in effect, that the testimony of four witnesses for the plaintiff that the fire spread from the dump to plaintiff's buildings did not outweigh the testimony of the firemen in favor of the defendant and that, therefore, "the jury did not give careful and conscientious consideration to this evidence."

Plaintiff argues that the testimony of the firemen amounted only to evidence that they did not see any fire between plaintiff's buildings and the dump when they arrived on the scene. On this point each fireman was asked by defendant's counsel, in direct examination, the following question, only slightly varied in minor particulars in each case: "Now, when you arrived there, when you got to the scene of the fire or at any time before you left the scene of the fire, before you returned to fire headquarters, did you observe or did you see any fire between the building that was in flames when you arrived there and the dump we are talking about?" The answer in each instance was "No". Counsel did not inquire as to whether the witness looked for any fire between the building and the dump or for any sign that there had been fire in that area. Plaintiff's counsel in cross-examination did ask several of the firemen if they had looked, and in each instance received a negative answer.

Defendant's counsel argues that the testimony of the twenty firemen is not merely negative testimony, because the circumstances here are different from the ordinary case. Here he urges, in effect, that the very purpose of the firemen in responding to an alarm is to look for fire, and if a fireman who so responds says he did not see any fire at a particular place at the scene, then it is tantamount to an answer that there was no fire unless it appears he actually did not look. And in this connection defendant's counsel argues in his brief that it was incumbent upon plaintiff's counsel to develop such fact by cross-examination of the other firemen on this point if he would claim that the testimony of all of them was merely negative and not positive.

With this argument we cannot agree. It is not the cross-examination which established the negative character of the testimony of these firemen. The form of the question propounded to them by defendant's counsel in direct examination did that. It was not the obligation of plaintiff's counsel to develop by cross-examination of each witness whether or not there was a sufficient foundation for transforming the

merely negative answer of the witness into one having some of the character of positive testimony.

We have carefully read all of the testimony of the firemen and we are forced to conclude that in no instance does the testimony of any one of them, on the existence or nonexistence of fire in the area between the dump and plaintiff's buildings, amount to positive evidence that there was no fire and that there had been no fire there. Indeed, standing alone it is difficult to see wherein a negative answer to such a question as above quoted amounts to evidence at all in the face of positive testimony that there was fire in that area. In the ordinary case where a witness is interrogated in this manner it would seem that his negative answer is of no probative value without establishing the fact that the witness did actually look; and even then the character of the testimony would not be transformed into positive testimony, but would be merely negative testimony subject to all of the infirmities of such testimony if opposed by any *quantum* of positive testimony. See *Bennett* v. *Robertson,* 107 Vt. 202; 10 R. C. L. 1010.

In the instant case there was positive testimony from at least three witnesses that this fire started in the dump, ignited the litter covering the area between the dump and the buildings and was carried by the wind to the buildings of the plaintiff. These witnesses were neither contradicted by positive testimony nor impeached. Some attempt was made to impair their credibility by showing that one of them was physically incapable of seeing normally beyond a distance of 90 feet; that the second was not in a position near enough to have a clear view of the facts concerning which he testified; and that the third was indirectly interested because of marital relationship to plaintiff Fealhaber.

In his rescript the trial justice does not say that any of these witnesses was unworthy of belief; but merely comments on the fact that one of them was about a half a mile away from the fire. In other words, he apparently refused to credit these witnesses, not because of anything that he observed in

the witnesses themselves while testifying which would impair their credibility, but solely from the character of the testimony itself. But he did not state that any of such testimony was self-contradictory, or was essentially opposed to the physical facts, or was inherently improbable, so as to destroy its probative value.

The testimony, as such, of these witnesses is available to us in the transcript. We have carefully read it and have considered the opportunity which each had for observing what occurred at the dump on the day of the fire. We have also weighed and considered what, if any, bias in favor of the plaintiff Fealhaber any of them might have had and we are of the opinion that their testimony was credible and of probative value. This being so, the jury had on the one hand the positive testimony of these persons who were eyewitnesses of the progress of the fire from its origin in the dump to the mill; and on the other hand the negative testimony of twenty firemen who did not see the fire start in the dump and who arrived at the scene of the fire after one building was almost consumed by the flames. In the circumstances we are of the opinion that the weight of the evidence on the question of liability preponderated in favor of the plaintiff and that the jury on this issue was justified in returning the verdict which they did. If the trial justice had properly evaluated the testimony of the firemen, he could not have justly set aside the verdict on that issue.

Even if the testimony of the firemen could be reasonably taken to mean that there was no fire in the area between the buildings and the dump when they arrived at the scene, there would still remain the question whether there had been a fire there. No witness for the defendant testified that the area was not burned over, whereas several witnesses for the plaintiff testified positively that it was burned over and blackened by the fire and that they had seen the fire travel over it to the plaintiff's buildings. In such a state of the evidence, plaintiff would still be entitled to hold the jury's verdict, as he would have proved the alleged cause of the fire

by a clear preponderance of the evidence. In this connection it appears to us that the trial justice misconceived the evidence when he says in his rescript that the flames were confined to a narrow area according to plaintiff's testimony. As we read the transcript the testimony is that the blackened surface burned over by the fire covered a wide area almost down to the Blackstone river.

This brings us to a consideration of the other ground of the trial justice's decision granting a new trial, namely, that the damages were excessive. Since he has discussed this question only in the case of plaintiff Enterprise Garnetting Company and has failed to pass upon the damages at all in plaintiff Fealhaber's case, we shall discuss each case separately in considering this point.

In the plaintiff company's case the jury returned a verdict for $58,000 for the loss of its machinery and stock. The trial justice found this grossly excessive; but, apparently, because he decided that plaintiff had not proved that the fire was caused by a fire from the defendant's dump, he did not deem it necessary to indicate what this excess amounted to. We agree with the trial justice that this amount is grossly excessive; but, on the view which we have taken of the evidence on the question of liability, a new trial cannot be granted until the excess damages are determined and the plaintiff given an opportunity to remit such excess. General laws 1938, chapter 540, § 1.

The question arises, should we determine such excess, or should we remit the case to the superior court with directions to perform this duty? Keeping in mind that this is a court of review, and that on a motion for a new trial the justice of the superior court ought to state his opinion on all material grounds of such a motion before granting or denying such trial, we are of the opinion that the parties in the instant case are entitled to and should first obtain the trial justice's opinion as to the amount of the excess damages. See *Severiano* v. *Diwinsky*, 58 R. I. 237, 242. For this reason, we are of the opinion that the Enterprise Garnetting Company case

should be remitted to the superior court with directions to determine such excess.

In the Fealhaber case the trial justice failed to pass upon the question of damages at all, but erroneously referred to his treatment of the damages in the Enterprise Garnetting Company case. Since the property damaged in each case was different and different witnesses testified as to the value and the extent of such damages, and since the rule for measuring such damages in the Fealhaber case was different from that in the company's case, it was the duty of the superior court to pass upon the question of damages separately in each case. We are of the opinion, therefore, that this case should be remitted to the superior court with directions to determine, in the first instance, whether the damages are excessive and, if so, to determine the amount of such excess.

Plaintiff's exception in each case is sustained, and each case is remitted to the superior court with directions to proceed further therein, in accordance with this opinion.

*John R. Higgins, Higgins & Silverstein,* for plaintiffs.
*Morris E. Yaraus,* City Solicitor, for defendant.