William R. RHEAUME, Plaintiff-Appellee,

v.

Betsey M. PATTERSON, Defendant-Appellant.

No. 351, Docket 26803.

United States Court of Appeals
Second Circuit.

Argued April 14, 1961.

Decided May 10, 1961.

Robert W. Larrow, Burlington, Vt. (McNamara & Larrow, Burlington, Vt., on the brief), for defendant-appellant.

Phyllis I. Armstrong, Middlebury, Vt. (Conley & Foote, Middlebury, Vt., on the brief), for plaintiff-appellee.

Before MEDINA, MOORE and FRIENDLY, Circuit Judges.

MEDINA, Circuit Judge.

Shortly after 8 o'clock on the evening of August 29, 1959, the automobile in which plaintiff was riding as a passenger came into collision with the side and rear end of the car driven by defendant-appellant, Betsey M. Patterson. Two young men in their mid-twenties were on their way to a dance in New Haven and they followed Mrs. Patterson out of Vergennes, Vermont, in the direction of Waltham, Vermont, on Route 7. As she

was travelling at about 30 miles an hour, Clement A. Ouellette, plaintiff's companion, decided to pass and he accelerated the speed of his car. At about this time Mrs. Patterson made a left turn into a driveway. The force of the impact was such as to push Mrs. Patterson's car off the road and into some bushes. Plaintiff was thrown against the windshield of the Ouellette car and the jury awarded him $10,000 for his injuries. The basis of jurisdiction is diversity of citizenship and the law of Vermont is applicable.

■ The issues of law and fact could scarcely have been less complicated. The trial judge properly ruled that under the controlling Vermont law, if any negligence on the part of Mrs. Patterson was a proximate cause of the accident any negligence on the part of Ouellette constitutes no defense. See Hall v. Royce, 1937, 109 Vt. 99, 192 A. 193, 196; Blondin v. Carr, 1959, 121 Vt. 157, 151 A.2d 121, 123; Ronan v. J. G. Turnbull Co., 1926, 99 Vt. 280, 131 A. 788, 793–794; Hunter v. Preston, 1933, 105 Vt. 327, 166 A. 17; Beatty v. Dunn, 1931, 103 Vt. 340, 154 A. 770; Bennett v. Robertson, 1935, 107 Vt. 202, 177 A. 625, 631, 98 A.L.R. 152; Meyette v. Canadian Pac. Ry., 1939, 110 Vt. 345, 6 A.2d 33.

On Mrs. Patterson's version of the occurrence she was in no respect negligent. She testified that she slowed down, set her blinker light operating for a left turn and, as she started to turn she suddenly saw the headlights of the Ouellette car bearing down upon her. The state trooper who investigated the accident testified that when the Patterson car was examined and the ignition turned on, the left blinker light began to operate, indicating that it had been turned on and was operating before the collision, as testified by Mrs. Patterson. The state trooper also testified that he smelled alcohol on Ouellette's breath. It was not disputed that plaintiff had consumed a considerable quantity of beer, some in the morning and more in the afternoon, and the state trooper smelled alcohol on his breath also.

At the time of the collision plaintiff was just finishing lighting a cigarette and "wasn't paying particular attention," but he saw no signal on the car ahead. Ouellette, however, testified positively that no signal was given. He also said that while he did not blow his horn, he did attempt to convey the impression that he was about to pass by blinking his lights from low beam to high beam and back.

In his deposition before trial plaintiff testified that he was not working on August 29, 1959, which was a Saturday. He also testified that on that morning he and Ouellette bought a six pack of bottles of beer and they each drank three before they reached Vergennes. He said they spent some time that afternoon at the Pine Griff restaurant where he consumed "maybe 6 or 7 glasses" of draft beer in the afternoon, and that he and Ouellette drank "about" beer for beer. On the trial he said he was mistaken about all this, except that he "did have five or six at the Pine Griff." He said he worked that day and he corroborated Ouellette's testimony that Ouellette only drank one bottle of beer in the morning and that they did no drinking whatever together that afternoon at the Pine Griff. Ouellette insisted he only drank one bottle of beer in the morning, about one-half a bottle after he got home for lunch and nothing thereafter. On this version it is strange the state trooper should have noticed alcohol on Ouellette's breath.

We are urged to reverse because: (1) in his summary of the testimony of the various witnesses for the benefit of the jury the trial judge failed to make specific reference to Mrs. Patterson's testimony that she signalled with her left turn blinker indicator and he likewise made no specific reference to the corroboration of this by the state trooper's testimony that the left blinker light started to operate when the ignition was turned on after the accident; (2) the trial judge refused to instruct the jury that the testimony given by plaintiff on

his deposition was to be considered not only with reference to his credibility but, as the admission of a party, generally on the issue of whose negligence caused the accident; and (3) that there was not the required expert testimony to warrant submission to the jury of the amount of damages to be awarded "as to future pain and suffering, future disability, impairment of ability to work and loss of wages," as required by Vermont law.

As, according to plaintiff's physician, the X-rays showed nothing, he was in the hospital only about two weeks, wore his neck brace for a short time and was out of work for about two months, the verdict of $10,000 would seem to be generous and only to be explained on the theory that the jury were satisfied that plaintiff would suffer some future pain and some future impairment of his ability to work. It may well be that the testimony of Dr. Ray Collins was merely to the effect that the weakness in plaintiff's right arm and his other symptoms "could" have been caused by a pinching of nerves connected with the accident. As there is to be a new trial, we think it not necessary to say more about this phase of the case than to remark that as we read the Vermont cases, Vermont law requires, at least when the injury is obscure, that damages for future pain and suffering, future disability, and future loss of wages or future impairment of capacity to work be supported by expert medical proof, see Tracy v. Massachusetts Bonding & Ins. Co., 1960, 121 Vt. 371, 159 A.2d 86; Emerson v. Hickens, 1933, 105 Vt. 197, 164 A. 381; Howley v. Kantor, 1933, 105 Vt. 128, 163 A. 628; Ryder v. Vermont Last Block Co., 1917, 91 Vt. 158, 99 A. 733, and that when expert medical proof is required, proof of mere possibility standing alone is insufficient. See Burton v. Holden & Martin Lumber Co., 1941, 112 Vt. 17, 20 A.2d 99, 135 A.L.R. 512. Such damages cannot be based on mere speculation and guess work. Howley v. Kantor, supra; Moore v. Grand Trunk Ry., 1919, 93 Vt. 383, 108 A. 334; Baldwin v. Gaines, 1917, 92 Vt. 61, 102 A. 338; Ryder v. Vermont Last Block Co., supra.

The instructions to the jury were so one-sided as to require a reversal of the judgment. Mrs. Patterson's whole defense rested upon her testimony that she signalled the turn by setting her left blinker light in operation, and the testimony of the state trooper that the left blinker light started to operate as soon as the ignition was turned on after the accident. Since the trial judge undertook to summarize the testimony of the various witnesses, covering plaintiff's evidence in some detail, but omitted any specific reference to this vital proof, we can draw no other inference than that the omission was prejudicial to the defendant. Especially is this so as counsel for Mrs. Patterson called the omission to the attention of the trial judge. The reason for the omission probably is that the trial judge thought this proof of little consequence as he remarked: "I give it [the blinker signal] a long time ahead to make a turn." But it was not the function of the trial judge to evaluate and assess the quality and effect of the testimony. This was the function of the jury.

We agree with the statement in appellee's brief that "the court should state claims and theories of the parties with equal fairness and completeness, and that the charge should be full, fair and complete," but we cannot agree that the instructions given in this case measured up to that standard.

In a similar manner the trial judge seems to have been so impressed with the fact that plaintiff's employer's records showed he worked three and a half hours on August 29, 1959, instead of not working at all as testified on the deposition, that he thought plaintiff was probably telling the truth when he said at the trial he was mistaken about the drinking by Ouellette on the day of the accident. Indeed, when, at a side bar conference at the conclusion of the charge, counsel for defendant called the court's attention to these prior contra-

.dictory statements and requested some reference to them and an instruction that these were admissions by a party under oath and "are direct evidence which they may consider," the trial judge not only brushed this request aside without comment, but he proceeded to discuss at some length the "undisputed" evidence that plaintiff was in error when he testified on his deposition that he did not work on the day of the accident. In conclusion he commented: "There are other statements somewhat contradictory in the deposition which you can consider in determining the credibility of his story."

 The refusal to charge as requested, and the supplemental instruction given, constitute in our opinion highly prejudicial error, also requiring a reversal of the judgment and a new trial. Plaintiff's testimony on deposition that Ouellette had been drinking during the morning and in the afternoon prior to the accident constituted the admission of a party and, consequently, under the law of Vermont, as generally, was admissible as evidence of the fact asserted as well as on plaintiff's credibility as a witness, providing, of course, that it was material and relevant. Hall v. Royce, supra; Bennett v. Robertson, supra; Blanchard v. Paltiel, 1934, 106 Vt. 510, 175 A. 226; Robinson v. Leonard, 1926, 100 Vt. 1, 134 A. 706. Obviously it was relevant to the basic issue whether defendant was in any way responsible for the collision. While any negligence of Ouellette could not be imputed to plaintiff, plaintiff could not recover if defendant's actions were not even in part a proximate cause of the accident. See Beatty v. Dunn, supra; Bennett v. Robertson, supra; Meyette v. Canadian Pac. Ry., supra. Moreover, it was also relevant to the important issue of Ouellette's credibility, for if the jury believed plaintiff's testimony on deposition, they might conclude that at the time of the accident Ouellette's capacity to observe was impaired, and hence refuse to credit his version of how the accident occurred. See 3 Wigmore, Evi-

dence, Section 933 (1940); McCormick, Evidence, Section 45, at p. 98 (1954).

What impression the trial judge may have had as to the amount of Ouellette's drinking that day and as to his credibility in general was of no more legal consequence than the impressions he might have entertained on the subject of who was responsible for the accident. The determination of these issues was for the jury, not the judge.

Reversed and remanded.