**UNITED STATES of America, Appellee,**

v.

**Barthelmio DALLI and Thomas Pytel, Appellants.**

**Nos. 572 and 573, Dockets 33746, 34145.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1970.

Decided March 30, 1970.

**46**

Ira D. London, Brooklyn, N. Y., for appellant Dalli.

David M. Markowitz, New York City, for appellant Pytel.

Paul V. French, Asst. U. S. Atty., Northern District of New York (James M. Sullivan, Jr., U. S. Atty., Northern District on New York, on the brief), for appellee.

Before LUMBARD, Chief Judge, ANDERSON, Circuit Judge, and DOOLING,** District Judge.

ANDERSON, Circuit Judge.

Barthelmio Dalli and Thomas Pytel each appeal from judgments of conviction on one count of selling, receiving and concealing five kilograms (approximately eleven pounds) of heroin in violation of 21 U.S.C. §§ 173 and 174, and on one count of conspiracy to commit the substantive offense, in violation of 18 U.S.C. § 371. Both were sentenced, as first offenders, to twenty years imprisonment on each of the two counts, the sentences to run concurrently.

The events which led to the arrest of appellants were as follows: Early in the month of August, 1968, federal narcotics agent John J. O'Brien received a tip from an informer that the Beautee Trail Hairstyle Shop in Brooklyn was a center for heavy narcotics traffic. Acting on this information federal agents established a continuous surveillance of the beauty shop, which was at the time closed for alterations and employees' vacations. In spite of this, a number of persons continued to frequent the establishment, including the appellant Dalli. Because of his activities at the Beautee Trail, Dalli, individually, was placed under continuous surveillance. The agents also examined the records of the New York Telephone Company which disclosed that between May 20th and August 4, 1968, a number of calls had been placed from Dalli's telephone to a number in Montreal, Quebec, listed in the name of Thomas Pytel. An inquiry of the Royal Canadian Mounted Police verified the agents' records in New York that Pytel was probably a member of the Montreal narcotics ring headed by one Guiseppi Controni.

The surveillance of Dalli was halted when he made a trip to Rome in the latter part of August, but it was resumed when he returned on September 5th. On September 6th Dalli was observed meeting with Stanley Simmons, a reputed supplier of heroin. Dalli again met Simmons in Brooklyn on September 10th. They both left in an automobile and drove north on the New York Thruway. Several federal narcotics agents, including Agent O'Brien, followed them to Plattsburg, New York, where they arrived at 3:30 p.m. Dalli and Simmons went directly to the Holiday Inn, where one of the agents overheard them registering at the desk under the fictitious name of "Forbes." They then went to room number 243, which the clerk had given them. Meanwhile, federal narcotics agents had established an extensive surveillance of the Holiday Inn and its environs.

All was quiet until 7:00 p.m., when Simmons emerged from the Inn, took a blue suitcase from the trunk of Dalli's car, and returned, suitcase in hand, to room 243. Soon afterward one Claude Bourdeau drove into the Holiday Inn parking lot in a Chevrolet convertible which he parked and in which he remained. At approximately 7:30 p.m. the agents saw Pytel arrive at the Inn in

---

** Of the Eastern District of New York, sitting by designation.

yet a third car, which he parked next to the convertible occupied by Bourdeau. Pytel then entered the Inn.

Not long after Pytel's arrival Dalli and Simmons came out of the Inn and searched the parking lot; they looked in the windows of the parked cars and otherwise closely examined the entire area. After about ten minutes of this activity they returned to their room. A few minutes later Bourdeau drove from the Inn up the road a short distance to the Howard Johnson's Motor Lodge. He soon returned to the Holiday Inn and handed a black valise to Pytel who carried it up to room 243. Shortly thereafter he was observed waving from the window of that room. Bourdeau responded by twice driving around the parking lot. Bourdeau then parked his car, entered the Inn, and about one minute later returned to the car. After another brief wait, Pytel emerged from the Inn carrying a raincoat over his arm. He went directly to Bourdeau's car and handed him a brown paper bag, which Bourdeau examined. He counted its contents and then returned the bag and contents to Pytel who returned to his own car and placed the brown paper bag on the back seat. He and Bourdeau then both left the Inn and headed north, each in his own vehicle, with federal agents in close pursuit.

Shortly after the departure of Pytel and Bourdeau, Dalli and Simmons also left the Inn. They were observed carrying a blue suitcase and a black valise, which were placed in the trunk of Dalli's Cadillic and covered with a blanket. They then headed south, followed by federal agents.

The agents following Pytel and Bourdeau stopped and arrested them at Champlain, New York, as they neared the Ca-

nadian border. A search incident to the arrest revealed $2,600 in Bourdeau's pockets and a brown paper bag containing $70,000 in cash on the rear seat of Pytel's car. Meanwhile, Dalli and Simmons, who had been stopped by the New York State Police on the request of the federal authorities, were also placed under arrest by pursuing federal narcotics agents. A search of Dalli's Cadillac revealed the blue suitcase containing a scale and the black valise which had in it five kilograms of pure heroin.

Pytel and Bourdeau, both Canadian citizens, were deported to Canada. As deportees, they could not legally reenter this country without the prior approval of the Attorney General or his designated agent. 8 U.S.C. § 1326. Bourdeau's mobility was further hampered by the fact that upon his return to Canada he was picked up as a parole violator and confined to St. Vincent DePaul Prison, near Montreal.

Following the filing of the indictment on December 10, 1968,[1] the defendants made a number of motions, of which one sought the suppression of certain evidence, including the five kilograms of heroin, on the ground that it had been seized as incidental to an illegal arrest. After a hearing, held by the district court on May 12, 1969, this motion was denied. The only defendant to appear at this suppression hearing was Dalli; Simmons was absent because he had absconded, Bourdeau because he was imprisoned in Canada, and Pytel because he had not received permission to reenter the United States in order to attend the hearing.[2]

The major issue on this appeal is Pytel's claim that the holding of the hearing in his absence was violative of his Sixth

---

1. Count one of the five-count indictment charged the four arrested with conspiracy to sell, receive and conceal heroin. Count two charged Pytel and Bourdeau with the illegal sale and concealment of heroin, and count three charged Dalli and Simmons with illegal purchase and concealment of the drug. Counts four and five, which charged the defendants with the sale

and purchase of heroin in other than the original stamped package, were subsequently dismissed by the district court for reasons not here pertinent.

2. Following the suppression hearing the district court severed the trials of Simmons and Bourdeau because it was impossible for them to be present at the joint trial.

Amendment right to confrontation and Rule 43, F.R.Crim.P., and that his conviction should, therefore, be reversed.

■ Although a defendant has a right to be present at a suppression hearing where testimony is to be taken, see 8A J. Moore, Federal Practice ¶43.03[1] (2d ed. 1969); 3 C. Wright, Federal Practice & Procedure § 721 (2d ed. 1968), this right is not absolute and may be relinquished by acts or statements of the defendant which constitute a voluntary waiver. Diaz v. United States, 223 U.S. 442, 453–459, 32 S.Ct. 250, 56 L.Ed. 500 (1912); Burley v. United States, 295 F.2d 317, 318–319 (10th Cir. 1961); Glouser v. United States, 296 F.2d 853, 855–856 (8 Cir. 1961), cert. denied, 369 U.S. 825, 82 S.Ct. 840, 7 L.Ed. 789 (1962). There was such a waiver by Pytel in the present case. Pytel had known for at least six weeks that the suppression hearing was assigned for May 12. He also knew that it would be necessary to obtain authorization from the Attorney General or his delegate to be permitted to enter the United States to attend court; indeed, he had been granted such permission on at least two prior occasions. He nevertheless made no efforts to secure the required permit or even to notify the court or the prosecuting attorney that such permission was lacking. He was well aware that under the circumstances he did not have to follow the full formalities for obtaining a re-entry permit (see 8 C.F.R. § 212.2 (1969)), to attend a federal court in a criminal proceeding in which he was involved. He knew this from his own experiences. He had only to make a simple request to the Assistant United States Attorney that such authorization be granted. He also could have petitioned the court. Pytel certainly knew that he had not received permission to enter the country in time for the hearing, and by not making the small effort required to request a permit, or even to notify the prosecuting

attorney or the court that such a permit was lacking when he knew of its necessity, Pytel voluntarily waived his right to be present at the suppression hearing.[3] See Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Cureton v. United States, 130 U.S.App. D.C. 22, 396 F.2d 671, 675–676 (1968).

■ Both appellants urge that it was error for the district court to find that the federal agents had probable cause to make the arrests because they had no proof of the reliability of the informer. But this is not a case where the arrest turned on the reliability of the informer and the information received from him. The only activity flowing from the tip-off was the establishment of the surveillance at the Beautee Trail Hairstyle Shop which independently led to the discovery of Dalli's involvement and eventually to the observation of the appellants' activities in Plattsburg on September 10th. It was these observed activities, including the motel registration under an assumed name, the surreptitious exchange of the suitcases, and the other forms of strange behavior of the appellants, all observed by the Government agents, which provided sufficient evidence for probable cause to make the arrests. See United States v. Malo, 417 F.2d 1242 (2 Cir. 1969); United States v. Gazard Colon, 419 F.2d 120 (2 Cir. 1969).

■ Pytel also argues that it was error for the district court to proceed to trial in the absence of the co-defendant Bourdeau, who, Pytel claims, would have been his major defense witness. We disagree. Bourdeau was imprisoned by Canadian authorities eight months before the trial in the present case. Yet at no time prior to the suppression hearing did Pytel move under Rule 15, F.R.Crim. P., for leave to take Bourdeau's deposition. Neither has Pytel shown that Bourdeau would have been willing to take the stand if he had been present (he was,

3. The record indicates that had Pytel or his counsel properly notified the Assistant United States Attorney as late as the day before the scheduled hearing, his entry into the United States could have been assured by a telephone call or telegram to the appropriate border officials.

after all, a co-defendant with a prior criminal record) ; or that, if he had testified, the evidence he would have given would have been at all helpful to Pytel's case. No prejudice was shown. Under these circumstances the district court's refusal to adjourn the trial because of Bourdeau's absence was not error. See Rule 52(a), F.R.Crim.P.

Dalli's remaining claim is that the marshaling of the evidence by the district court over-emphasized the Government's case and was, therefore, prejudicial to appellants. We have carefully examined the charge to the jury and find no error. The marshaling of the evidence was fair and unbiased and the greater length devoted to the discussion of the Government's case derived from the fact that the defendants failed to present any evidence of their own. See United States v. Tyminski, 418 F.2d 1060, 1062 (2 Cir. 1969).

The remaining points raised by appellants do not require or merit discussion.

The judgments of conviction are affirmed.