NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 113

No. 2015-307

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Criminal Division |
| | |
| Michael Grace | September Term, 2016 |

Robert A. Mello, J.

David R. Fenster, Addison County State's Attorney, and Ashley A. Hill, Deputy State's
  Attorney, Middlebury, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, Marshall Pahl, Appellate Defender, and Kerrie Johnson,
  Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.     **EATON, J.**   Defendant appeals from a judgment of conviction of driving under the influence, third offense, in violation of 23 V.S.A. §§ 1201(a) and 1210(d).  Among other claims, defendant contends the trial court committed prejudicial error by proceeding with a motion-to-suppress hearing in defendant's absence.  We agree, and therefore reverse the order denying the motion to suppress.

¶ 2.     This case arose out of a motor vehicle stop that occurred on the evening of November 19, 2013, in the Town of Bristol, and resulted in a charge against defendant of driving

under the influence. Prior to trial, defendant moved to suppress all evidence resulting from the stop and detention. The court held a hearing on the motion in March 2015. At the start of the hearing, the court inquired about defendant's absence, and defense counsel informed the court it was "my fault, or at least my office's fault" for failing to inform defendant that he should be there "in person for this." The court inquired whether there was "any issue of the defendant not being here today?" The prosecutor responded, "[a]s far as going forward with the hearing, no, your Honor." The court then reviewed Vermont Rule of Criminal Procedure 43 to "just [to] be sure," noted that it provided that a defendant's presence is not required "at a conference or argument on a question of law," and concluded, "So I don't see any issue." Defense counsel then stated that defendant, "for what it's worth . . . is under waiver of appearance." The court acknowledged the waiver, and proceeded with the hearing. Defense counsel did not object to the hearing proceeding.

¶ 3.     Officer Duplissis, a sergeant with the Vermont State Police, was the only witness to testify at the hearing. The officer explained that, on the night in question, he had just finished executing a search warrant at a residence on Route 116 in Bristol when he saw a truck drive by going "clearly in excess of the speed limit" and well over the center line into the other lane. The officer testified that he and another officer entered his cruiser and effected a motor vehicle stop. They then spoke with the driver—later identified as defendant—who acknowledged that he was speeding but explained that he had been followed by another vehicle through town.

¶ 4.     Defense counsel cross-examined the officer briefly, questioned him about his location at the time he observed defendant's vehicle, and confirmed that his observation of the vehicle's speed was "purely visual" and not based on the use of a radar gun. Defense counsel then argued that a visual estimate of the vehicle's speed was inadequate to justify the stop, and posited that it was reasonable for a driver, observing several police cruisers on the side of the road, to cross

2

the center line to give them "a little bit of space." The trial court denied the motion, finding on the record that the officer's training allowed him to make a reasonably accurate estimate of a vehicle's speed, and that there was no basis to support an inference that the vehicle crossed the center line to avoid the parked police cruisers.

¶ 5. The case proceeded to trial, where Officer Duplissis's account of the stop was largely consistent with his earlier testimony. He recalled further that, following the stop, the officers observed a "furtive movement" by defendant and, based on that, ordered him to exit the vehicle. As defendant opened the car door, Officer Duplissis "heard the clink of something metallic landing on the ground" and, concerned that it was a firearm, ordered defendant to show his hands. When he arrived at the vehicle, the officer observed that the object was a black box cutter.

¶ 6. Officer Duplissis then spoke with defendant, who told of being tailgated through Bristol and speeding to get away from the following vehicle. While they were conversing, the officer observed that defendant's eyes were bloodshot and watery. In response to further questioning, defendant initially denied that he had consumed any alcoholic beverages that evening, but later acknowledged that he had a glass of wine. Based on these observations, the officer administered a number of field sobriety exercises, and subsequently arrested defendant for DUI and transported him to the police barracks for processing and blood alcohol testing. The test result was 0.099, which a State chemist calculated to be 0.121 at the time of operation.

¶ 7. Officer Neary, a trooper with the Vermont State Police, assisted with the stop. His account of the stop, detention, and arrest was largely consistent with that of Officer Duplissis, although he also recalled detecting an odor of alcohol from defendant's breath.

¶ 8.     Defendant testified on his own behalf.  He explained that he was a resident of Ohio but had been visiting his son and brother in Bristol on the day in question.  He recalled that he had spent the day hunting but had eaten nothing and had one glass of wine with his son that evening.  He stated that, as he was returning through town, he sped up to avoid another vehicle that was tailgating him.  He denied, however, that he was speeding or that he had crossed the center line.  At the time of the stop, defendant recalled that his vehicle had an Ohio license plate, that he was wearing a flannel with a vest, and had bushy hair.

¶ 9.     Defendant's recollection of the events that occurred after the stop differed in several respects from that of the officers.  He testified that the officers ordered him to put his hands up and exit the vehicle, and that their guns were drawn as they approached.  He recalled that one of the officers then explained that they had just "come off a drug bust," and that the officer then asked defendant "where's the drugs?" and sought permission to search his vehicle.  Before performing the field sobriety tests, defendant stated that he informed the officers that he had a bad back.  He also testified that his eyes were always bloodshot and watery due to a crushed lumbar in his back for which he was taking medication.  Defendant's son testified, as well, corroborating defendant's account of his activities that day, including his claim that he had only a glass of wine before leaving.  Called to testify in rebuttal, Officer Duplissis denied that he had ever suspected defendant of possessing drugs or asked him where he kept his drugs, and offered that he had a certified "drug dog" with him during the stop which had stayed in the police cruiser.

¶ 10.    As noted, a jury found defendant guilty as charged.  He was sentenced to a term of one to three years, ten days to serve, and probation.  This appeal followed.

¶ 11.    Defendant contends that the trial court erred in proceeding with the suppression hearing in his absence.  Absent an objection on this basis, we examine the claim for plain error,

4

which requires the showing of a "glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." State v. Yoh, 2006 VT 49A, ¶ 39, 180 Vt. 317, 910 A.2d 883 (quotation omitted).

¶ 12. "One of the most basic rights guaranteed by the [Sixth Amendment] Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338 (1970). This right is codified in V.R.Cr.P. 43(a), which provides that "[t]he defendant shall be present at the arraignment, at any subsequent time at which a plea is offered, at every stage of the trial . . . and at the imposition of sentence, except as otherwise provided by this rule." In determining the scope of the right, the U.S. Supreme Court has explained that it applies "at any stage of the criminal proceeding that is critical to its outcome" and where the defendant's "presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987). The right has been recognized as applicable in any proceeding where evidence is adduced that relates to disputed factual issues critical to the outcome of the case, and the defendant's absence would undermine its fairness and accuracy. See U.S. v. Moe, 536 F.3d 825, 830 (8th Cir. 2008) ("If the proceeding at issue addresses or involves factual questions, it is possible that the defendant's absence would thwart 'a fair and just hearing.' " (quotation omitted)); United States v Clark, 475 F.2d 240, 246 (3d Cir. 1973) ("[W]here . . . there are substantial issues of fact as to events in which the [defendant] participated, the trial court should require his production for a hearing." (quotation omitted)); People v. Dokes, 595 N.E.2d 836, 839 (N.Y. 1992) ("In determining whether a defendant has a right to be present during a particular proceeding, a key factor is whether the proceeding involved factual matters about which defendant might have peculiar knowledge that would be useful in advancing the defendant's or countering the People's position.").

5

¶ 13.    Although we have not addressed the issue, these considerations have persuaded the vast majority of courts, state and federal, to hold that a suppression hearing constitutes a critical stage of a criminal trial in which the defendant enjoys a constitutional right to be present.  See, e.g.,  U.S. v. Law, 528 F.3d 888, 904 (D.C. Cir. 2008) (noting that defendant has right to be present at any critical stage of criminal proceeding where "his presence would contribute to the fairness of the procedure, and this can include a suppression hearing" (quotation omitted); Henderson v. Frank, 155 F.3d 159, 166 (3d Cir. 1998) (holding that pretrial suppression hearing is critical stage where right to be present applies because "its results might settle the accused's fate" (quotation omitted)); U.S. v. Johnson, 859 F.2d 1289, 1294 (7th Cir. 1988) (holding that "an accused person has a right to be present at every critical stage of a criminal proceeding against him" and "a pretrial suppression hearing is a critical stage."); U.S. v. Dalli, 424 F.2d 45, 48 (2d Cir. 1970) (observing that "a defendant has a right to be present at a suppression hearing where testimony is to be taken" while recognizing that right may be voluntarily waived); People v. Gallegos, 226 P.3d 1112, 1120 (Colo. App. 2009) ("A defendant has a right to be present at every critical stage of a criminal trial, including a suppression hearing."); State v. Ralph B., 131 A.3d 1253, 1263 (Conn. App. Ct. 2016) (holding that suppression hearing was "critical stage" where defendant had Sixth Amendment right to be present); Redman v. State, 337 A.2d 441, 444 (Md. Ct. Spec. App. 1975) (holding that pretrial suppression hearing constitutes critical "stage of the trial" where defendant enjoys constitutional right to be present); Robinson v. Commonwealth, 837 N.E.2d 241, 247 (Mass. 2005) (holding that "because the suppression hearing in this case would have required the taking of evidence and also involved the admissibility of substantial evidence that could determine the outcome of the case, the defendant was entitled . . . to be present"); State v. Grey, 256 N.W.2d 74, 76-77 (Minn. 1977) (observing that "[f]ederal courts that have applied these principles in the specific context of

6

suppression hearings have almost uniformly held that it is reversible error to conduct such hearings in the absence of defendant's physical presence," and holding that "defendant's absence from the pretrial suppression hearing was a violation of the due process and confrontation clauses found in both our state and Federal constitutions"); State v. Williams, 250 N.E.2d 907, 913-14 (Ohio Ct. App.1969) ("[A] hearing on a motion to suppress evidence, at which testimony of a witness is received, whether held before or during the trial of a case, is such a part of a trial as to require the presence of the accused."); see generally C. Wright, et al., 3B Federal Practice & Procedure § 722 (4th ed.) ("If fact issues are presented . . . as they often will be on a pretrial motion to suppress evidence, . . . it would seem that defendant has a right to be present."). As the New York Court of Appeals has cogently explained:

> There is no justification for distinguishing between the defendant's right to "be present" in connection with testimony elicited at a trial on the propriety of a search and seizure and this same right in connection with testimony taken at a suppression hearing. . . . The significance of the suppression hearing is such that the rationale for requiring the defendant's presence at the trial applies with equal force to require his presence at the suppression hearing. A denial of a motion to suppress evidence is a crucial step in a criminal prosecution: it may often spell the difference between conviction or acquittal. . . . . [T]he defendant alone may be able to inform his attorney of inconsistencies, errors and falsities in the testimony of the officers or other witnesses. In such a circumstance to hold that his presence is not essential is to deprive him of the opportunity to defend a denial of due process.

People v. Anderson, 213 N.E.2d 445, 447-8 (N.Y. 1965) (quotation omitted).

¶ 14.   These decisions demonstrate overwhelmingly that, where a court is asked to make factual findings based on the evidence presented at a suppression hearing, a defendant must be accorded the right to be present in order to confront the witnesses arrayed against him or her, to assist counsel in formulating a defense, and ultimately to ensure a fair hearing and reliable result. Here, the trial court conducted a full evidentiary suppression hearing, heard testimony, and entered

7

findings. This was not a case where the only issue was one of law and the outcome could not have been affected by defendant's absence. Cf. Johnson, 859 F.2d at 1294-95 (holding that defendant's presence was not required at suppression hearing where sole legal question was whether photographic array was unduly suggestive). The trial court's reliance on the exception in V.R.Cr.P. 43 for "argument upon a question of law" was therefore misplaced.

¶ 15. Nor does the record support a finding that defendant voluntarily waived his right to be present. See Dalli, 424 F.2d at 48 (noting that right to be present at suppression hearing "is not absolute and may be relinquished by acts or statements of the defendant which constitute a voluntary waiver"). The general written waiver of appearance signed by defendant, to which the prosecutor alluded, merely tracked the language of V.R.Cr.P. 43(c)(3) in providing for a waiver of appearance at status conferences and "arguments on questions of law." Moreover, while defense counsel appeared to acquiesce in the hearing going forward, his explanation for defendant's absence made it clear that it was not based on a knowing and voluntary waiver by defendant of his right to be present. Counsel stated that he had sent defendant a notice of the hearing but had not explained to defendant his need to be present in person. Thus, there is nothing to indicate that counsel consulted with defendant on this point and explained his rights and what he would be sacrificing by not appearing, or that defendant in response knowingly and voluntarily waived the right. See People v. Gaines, 534 N.Y.S.2d 257, 258-59 (N.Y. App. Div. 1988) (observing that, although right to be present at suppression hearing may be waived, "defendant must be informed in some manner of the nature of his right to be present and the consequences of a failure to appear," and holding that counsel's waiver was ineffective where there was no clear showing that counsel spoke with defendant and that "defendant understood that his presence might be helpful to his defense").

8

¶ 16.    The question thus remains whether, notwithstanding the absence of an objection, the trial court's decision to proceed without defendant's presence was an error so grave as to "strike at the very heart of the defendant's constitutional rights." Yoh, 2006 VT 49A, ¶ 39 (quotation omitted).  As we explained in Yoh, a finding of plain error requires a showing as follows: "First, there must be an error; second, the error must be obvious; and third, it must affect substantial rights and result in prejudice to the defendant." Id.  If these factors are met, "an appellate court should correct a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quotation and alteration omitted).

¶ 17.    As discussed above, the court's decision to proceed without defendant's voluntary waiver of his right to be present was a fundamental violation of defendant's constitutional right to confront the witnesses against him and constituted a patent and obvious error.  Also as discussed, the court's decision affected a substantial right.  As noted, a suppression hearing represents a critical stage in a criminal prosecution. It can, and often does, "spell the difference between conviction or acquittal," and the defendant's presence may be crucial "to inform his [or her] attorney of inconsistencies, errors and falsities in the testimony of the officers or other witnesses." Anderson, 213 N.E.2d at 447; see also Commonwealth v. Campbell, 983 N.E.2d 1227, 1231 (Mass. App. Ct. 2013) (noting that defendant's presence at suppression hearing allows him or her to hear and assess State's witnesses, "consult with his [or her] attorney and, as a participant in the event under examination, offer a unique perspective").

¶ 18.    The record here shows that defendant's testimony at trial differed markedly from, and in several respects directly contradicted, that of the State's only witness at the suppression hearing.  Had defendant been present at the suppression hearing, he could have testified to the same effect.  In addition, defendant could have provided counsel with useful and potentially critical

9

information in counsel's cross-examination of the witness. We cannot conclude with any confidence, therefore, that defendant's absence did not prejudicially affect the outcome of the proceeding. See Grey, 256 N.W.2d at 77 (holding that reversal was required where defense counsel not only failed to object, but affirmatively indicated that counsel had no objection to holding suppression hearing in chambers outside of defendant's presence, because it would be "impossible . . . to determine what contribution or assistance to counsel defendant could have rendered had he been present to hear the oral testimony of" police officer who seized evidence).

¶ 19. Finally, we conclude that the error "seriously affects the fairness, integrity, or public reputation" of the judicial process. Yoh, 2006 VT 49A, ¶ 39 (quotation and alteration omitted). As the court observed in Grey, criminal justice requires not only a fair and impartial hearing, but also one that "from a reasonably objective viewpoint, has every appearance of fairness." 256 N.W.2d at 77. An affirmance on this record, in the face of an "obvious and substantial error" affecting a core constitutional right, would in our view diminish the integrity and reputation of the judicial process, and contravene the interests of justice. Yoh, 2006 VT 49A, ¶ 42. In deference to these interests, we conclude that the judgment must be reversed, and the matter remanded for a new proceeding consistent with the views expressed herein. Our conclusion renders it unnecessary to address defendant's remaining claims.

The order denying defendant's motion to suppress is reversed, and the case is remanded for a new suppression hearing with defendant present unless he voluntarily waives that right. The judgment of conviction remains in effect unless and until the court on remand should decide to grant the motion to suppress, in which case we order the judgment reversed and a new trial afforded to defendant.

FOR THE COURT:

_____

Associate Justice

10