VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    24-AP-212



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

AUGUST TERM,   2025

State of Vermont v. Brittany L. Knight\*          }          APPEALED FROM:
                                                 }          Superior Court, Lamoille Unit,
                                                 }          Criminal Division
                                                 }          CASE NO. 192-4-20 Lecr
                                                            Trial Judge: Daniel P. Richardson

In the above-entitled cause, the Clerk will enter:

Defendant pled guilty to domestic assault and appeals from the trial court's restitution order.  We affirm.

The record indicates the following.  Defendant was charged with domestic assault for allegedly punching her mother in the face several times with a closed fist on April 5, 2020.  The affidavit of probable cause alleged that defendant's mother called 911 after being punched by defendant.  Defendant's mother's eye was bruised and bleeding and she thought her nose was broken.  Defendant claimed that her mother attacked her.  Defendant noticed her mother was bleeding, which defendant thought was "probably from her broken glasses."\*

Defendant pled guilty to domestic assault on July 15, 2024, pursuant to a plea agreement.  As a factual basis for the plea, defendant acknowledged that on the date in question, her mother reported to police that defendant "hit her three times in the face with a closed fist" and that her mother "wasn't sure if her nose was broken."  Defendant agreed that she "hit [her] mom" and "that would have caused her some pain."  As part of the plea agreement, the court conditionally dismissed a second charge.  The parties agreed to a contested restitution hearing for the domestic-assault conviction.  The court informed the parties on the record that, absent any stipulation to restitution, the restitution hearing would be held on July 30, 2024, at 1:30 p.m.

Defendant did not appear at the scheduled restitution hearing.  The court noted that defendant's counsel was present, that counsel tried unsuccessfully to reach defendant, and that

---

\*    The affidavit of probable cause is part of the procedural history of this case and included here for that reason.  Defendant's request to strike this information from the State's brief is denied.

defendant's absence was apparently work-related.  Defendant did not request a continuance and her attorney raised no objection to continuing with the hearing.  A victim's advocate from the Lamoille County State's Attorney's Office testified that she assisted the victim in obtaining restitution for injuries incurred in the domestic-assault case.  She submitted evidence of the victim's itemized medical expenses from a dentist visit and for new eyeglasses in early April 2020.  The advocate testified that she personally received the itemized bills and paid them on the victim's behalf very early in these proceedings, money that was reimbursed by the Victim's Compensation Program.  Following defendant's guilty plea, the Victim's Compensation Program sought reimbursement for funds expended on the victim's behalf.

At the close of the hearing, the court issued a restitution order in the claimed amount of $574.  The court acknowledged that the State relied in part on circumstantial evidence.  Because defendant's mother was punched in the face and injured, the court inferred that the resulting bills paid by the Victim's Compensation Board for the victim's eyeglasses and dentures were related to those injuries.  The court noted that the Board's approval of a compensation request from a victim was regulated by statute.  See 13 V.S.A. § 5355(a) (providing that, "[a]fter review of the evidence relevant to the application for compensation, the Board shall approve the application if a preponderance of the evidence shows that as a direct result of the crime an injury occurred that resulted in a pecuniary loss to the victim or the dependent"); id. § 5356(a) ("If the application [for compensation] is approved, the Board shall authorize cash payments, not to exceed $10,000.00, to or on behalf of the applicant, equal to the unreimbursed pecuniary loss directly resulting from the injury or death of the victim").  The court found that the Board paid expenses to service providers in the victim's name for costs associated with the victim's eyeglasses and dentures.  Defendant pled guilty to domestic assault and there was evidence in her criminal case that she struck the victim, likely in the face.  The court found it reasonable to infer that defendant's actions were damaging to someone who had dentures and wore glasses.  It concluded that the State satisfied its burden of proof by a preponderance of the evidence and therefore approved the restitution request.  This appeal followed.

Defendant first argues that the court committed plain error by proceeding with the scheduled restitution hearing in her absence.  Defendant maintains that she had a constitutional right to be present at the hearing and she did not waive that right by failing to attend the hearing.  Defendant acknowledges that this Court has never addressed whether a restitution hearing is a "stage of the criminal proceeding that is critical to its outcome," State v. Grace, 2016 VT 113, ¶ 12, 204 Vt. 68 (quotation omitted), such that she has the right to be present.  She nonetheless contends that the error was obvious and that it "[struck] at the very heart of [her] constitutional rights."

An appellant raising a plain-error claim faces "a very high bar" as "we find plain error only in rare and extraordinary circumstances."  State v. Ray, 2019 VT 51, ¶ 6, 210 Vt. 496 (quotations omitted).  As we have explained, "[p]lain error requires a showing that (1) there was error, (2) the error is obvious, (3) the error affects the substantial rights of and results in prejudice to the defendant, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  Id. (quotation omitted).  Defendant fails to show plain error here.

2

Pursuant to Vermont Rule of Criminal Procedure 43(a)(1), a "defendant shall be present at the arraignment, at any subsequent time at which a plea is offered, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." An exception to this rule exists "whenever a defendant, initially present, . . . voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to remain during the trial." V.R.Cr.P. 43(b)(1).

As defendant acknowledges, this Court has never addressed whether a restitution hearing is a "critical stage" of a defendant's criminal proceeding such that a defendant has a right to be present. Assuming arguendo that it is, the court did not commit plain error in proceeding with the hearing after implicitly finding that defendant voluntarily chose not to attend. See V.R.Cr.P. 43(b)(1); State v. Stanley, 2015 VT 117, ¶ 23, 200 Vt. 341 (holding that trial court did not err in proceeding with sentencing hearing despite defendant's absence, explaining that "[b]y voluntarily absenting himself . . . , defendant waived his right to be present"). Defendant was personally notified of the date of the restitution hearing on the record. Her counsel attended the restitution hearing and indicated he was unable to reach defendant. The court found defendant's absence was apparently work-related.

Unlike Grace, on which defendant relies, defendant fails to show how she was prejudiced by the alleged error in going forward with the restitution hearing in her absence. 2016 VT 113, ¶ 15. Defendant acknowledged at the change-of-plea hearing that on the date in question, her mother reported to police that defendant "hit her three times in the face with a closed fist" and that her mother "wasn't sure if her nose was broken." Defendant agreed that she "hit [her] mom" and "that would have caused her some pain." The State introduced evidence to show the amount paid by the Victim's Compensation Board on the victim's behalf for medical expenses incurred shortly after the date of the domestic assault. Defendant does not identify any specific evidence she would have presented or any specific challenges she would have raised to the State's evidence had she attended the hearing. "Prejudice must exist to demonstrate that error undermined fairness and contributed to a miscarriage of justice." State v. Pelican, 160 Vt. 536, 539 (1993). Defendant fails to make the necessary showing here.

Defendant next argues that there is insufficient evidence to support the court's restitution award. She maintains that the State failed to establish by a preponderance of the evidence that her actions caused the victim's loss.

Vermont's criminal-restitution statute requires that restitution "be considered in every case in which a victim of a crime . . . has suffered a material loss." 13 V.S.A. § 7043(a)(1). As relevant here, a "victim" is "a person who sustains physical, emotional, or financial injury . . . as a direct result of the commission . . . of a crime." 13 V.S.A. § 5301(4); id. § 7043(a) (incorporating definition of "victim" from 13 V.S.A. § 5301(4)). " '[M]aterial loss' means uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses." Id. § 7043(a)(2). The Victims Compensation Board is entitled to seek reimbursement for payments it makes on victims' behalf. Id. § 7043(i)(2) ("[T]o the extent that the Victims Compensation Board has made payment to or on behalf of the victim in accordance with chapter 167 of [Title 13], restitution, if imposed, shall be paid to the Restitution Unit, which shall make payment to the Victims Compensation Fund."). "The trial court has

3

discretion in determining the amount of restitution owed, so long as there is a direct link between the victim's loss and the defendant's conduct." State v. Gorton, 2014 VT 1, ¶ 12, 195 Vt. 460.

Defendant argues that this case is like State v. Baker, 2017 VT 91, 205 Vt.569. We disagree. In that case, we rejected the argument that a "but-for" standard of causation applied in restitution cases, i.e., that "reasonable actions taken in response to the natural and probable consequences of a crime are recoverable via restitution." Id. ¶ 9. We reiterated that there must be a "direct link" between the crime and the restitution, which "means that there must be proximate cause between the criminal act and the losses claimed." Id. ¶ 10. We recognized that while "the foreseeability analysis is similar to the causation test in the civil context, . . . criminal restitution requires a narrower reading of causation." Id. ¶ 14. "[B]ecause restitution is triggered by a conviction, the harm for which a defendant pays restitution must be a directly foreseeable result of the criminal act that leads to a conviction." Id.; see also id. ¶ 16 (recognizing that "[r]estitution is also not meant to cover losses that are consequential to or incidental to the crime").

In Baker, the victim was visiting Vermont and her car was totaled as a result of the defendant's grossly negligent operation. The victim's husband missed work to drive to Vermont and assist his family in addressing the situation. We concluded that the husband's lost wages were not a "direct result" of the defendant's negligent operation because the husband missed work based on his "desire to assist his wife and children," and not as a direct result of the loss of the vehicle. Id. ¶ 21. "There was no evidence that he was directly prevented from continuing to work as a result of the accident." Id. We thus held that his "lost wages [were] . . . not compensable under Vermont's restitution statute." Id.

We are faced with a different situation here. Defendant admitting hitting her mother and causing her pain; she agreed that law enforcement was called on the date in question and that her mother reported that defendant punched her in the face three times with a closed fist and her mother thought her nose might be broken. Very shortly thereafter, the victim incurred medical expenses and worked with a victim's advocate to obtain payment for her eyeglasses and dentures. The Victim's Compensation Board approved the payment, an approval that required, by statute, a showing that as "a direct result of the crime an injury occurred that resulted in a pecuniary loss to the victim." 13 V.S.A. § 5355(a). The Board then sought restitution for the money paid on the victim's behalf and the State submitted bills to establish the amount of restitution.

The trial court could rely on circumstantial evidence in reaching its conclusion and draw reasonable inferences from the evidence. See, e.g., State v. O'Neill, 2019 VT 19, ¶ 35, 209 Vt. 599 (recognizing that State can "rely exclusively on circumstantial evidence in proving its case"); State v. Murphy, 2023 VT 8, ¶ 17, 217 Vt. 578 (recognizing that factfinder "may draw rational inferences" in reaching its ultimate determination). It did not rely on the bills alone, as defendant suggests, or base its decision on mere speculation. The standard of proof here was a preponderance of the evidence, which "is satisfied when the equilibrium of proof is destroyed, and the beam inclines toward him who has the burden, however slightly." In re M.L., 2010 VT 5, ¶ 25, 187 Vt. 291 (reiterating that "[a] bare preponderance is sufficient, though the scales drop but a feather's weight") (quotations omitted)). Taking the evidence as a whole, the court acted within its discretion in concluding that, while this was a close case, it was "more probably true

4

than false," id. ¶ 26 (quotation omitted), that a "direct link" existed "between the victim's loss and the defendant's conduct," State v. Gorton, 2014 VT 1, ¶ 12.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Karen R. Carroll, Associate Justice