Mary Beatty *v.* F. B. Dunn et al.

January Term, 1931.

Present: Powers, C. J., Slack, Moulton, Willcox, and Thompson, JJ.

Opinion filed May 5, 1931.

342

*Theriault & Hunt* for the defendant Kenneth Dunn.

*J. J. Finn* and *J. Ward Carver* for the plaintiff.

Powers, C. J.   The plaintiff was riding in a closed car owned and driven by her son, John Beatty.   As they were driving northly along the main street of Craftsbury Common, the defendant was driving easterly on a side street that entered, but did not cross the main street aforesaid.   The two cars reached the junction of these streets at about the same time, the plaintiff's car arriving a bit sooner than the defendant's. Neither driver discovered the approach of the other until the cars were almost in collision.   Beatty then saw the defendant's car coming rapidly from his left and so near that a collision impended.   He turned his car to the right, speeded it up sharply, ran with his right wheels on the grass at the side of the road some distance and until he saw that he was out of the way of the defendant's car.   Then he applied his brakes until he had reduced his speed to about five miles an hour, released the brakes, ran a few feet northerly, turned sharply back into the roadway, ran nearly across at a slightly accelerated speed, and his car tipped over in the road, headed partly back toward the Common.   The plaintiff brings suit for personal injuries suffered by her when the car tipped over.   At the close of the evidence, the defendant moved for a verdict and excepted when his motion was overruled.

The question presented by this motion is quite unusual. The cars were not in actual collision.   No question of the defendant's negligence is raised.   Nor is any question of contributory negligence involved.   The defendant predicates his motion squarely upon the question of causation, and that alone. Was the defendant's negligence a proximate cause of the tip-over?

In arguing this question, the defendant assumes that the plaintiff is entitled to the benefit of the advantage accorded to one who acts in an emergency created by no fault of his, and in effect concedes the defendant's liability for all damages proximately resulting from his negligence.   In our discussion of the question, we accept these propositions as applicable.

■ ■   Though, as we have seen, the case is unusual, the law applicable to it is familiar to this Court.   It was recently

restated as follows: "When negligence is established, liability attaches for all the injurious consequences that flow therefrom until diverted by the intervention of some efficient cause that makes the injury its own, or until the force set in motion by the negligent act has so far spent itself as to be too small for the law's notice." *Cameron* v. *Bissonette,* 103 Vt. 93, 152 Atl. 87, 88. The difficulty in applying this rule often lies in determining what is an "intervening cause" therein referred to. The answer to this question is to be found in the character of the intervening act. As we said in *Woodcock's Admr.* v. *Hallock,* 98 Vt. 284, 291, 127 Atl. 380, 383, if this, itself, is "a natural and proper result of the original negligence, it will not necessarily prevent a recovery thereon." Otherwise, it will. Such an efficient, intervening cause, in order to stand as the responsible cause of the ultimate result, must be a new and independent force or agency breaking the chain of causal connection between the original wrong and that result. If that result is merely accelerated by the new cause, the chain is not broken. Thus it is that the negligence of a third person may or may not amount to an efficient intervening cause. If it is something that, in the eye of the law, the person charged was bound to anticipate, the causal connection is not broken; otherwise, the chain of causation is broken. *Gordon* v. *Bedard,* 265 Mass. 408, 164 N. E. 374, 376; *Illinois Cent. R. R. Co.* v. *Oswald,* 338 Ill. 270, 170 N. E. 247, 249.

So we are to test the succession of events that followed young Beatty's discovery of the peril of a collision by these well-established rules. The law appreciates that one confronted with a sudden peril may do some things which, after it is all over, may seem to have been improper or even foolish. It gives him a reasonable opportunity to recover from the shock naturally resulting from such a situation and affords him a reasonable opportunity to regain control of himself and his car, before he can be charged with contributory negligence. We are now referring to one who is confronted with a sudden peril through no fault of his own. During the interval of time just referred to, the negligence of the person responsible for the dangerous situation accompanies the person seeking to escape therefrom. But when that danger has been met and overcome, so that there is nothing more to be done to avoid it or its logical

consequences, the force set in motion by the defendant's act has spent itself, and there is no causal connection between it and what may follow. In such a case, the dangerous situation created by the defendant's fault ceases to be the cause and becomes the occasion, merely, of subsequent injurious consequences. In this case, the chain of causation remained unbroken until Beatty had escaped the danger of a collision, had recovered control of himself and his car—if the same was impaired by his peril—and was in a situation to proceed on his journey.

The plaintiff is bound by the case made by her proof. Her right of recovery depends wholly upon what the transcript shows. We have already stated how Beatty handled his car after he discovered the threat of the defendant's car. The facts recited are taken from Beatty's own testimony. He also testified that by using his brakes he could stop his car "dead," when going five miles an hour; and that he was not going over seven or eight miles an hour when the car tipped over. Nothing in his testimony tends to show that he was at all excited or distraught when he turned back into the roadway. Indeed, there is nothing to indicate that he had been in that condition at any relevant time. On the contrary, he seems to have handled his car coolly and skilfully up to the time he turned back into the roadway. There was nothing about the condition of the road or its margin to make his return to the roadway difficult or dangerous. There must have been some mistake or carelessness on his part at or after the time he turned to his left that caused the tip-over. The transcript wholly fails to connect the defendant with that mistake or carelessness.

Some effort is made to show by the testimony of the witness Wheeler that Beatty was going much faster than five miles an hour when he turned back into the roadway. But the context shows conclusively that the witness referred to the sharp angle of this turn, and not to the speed of the car.

Since, so far as the record shows, Beatty was the complete master of his actions when he turned back into the road, his negligence then or thereafter was an intervening and efficient cause which broke the chain of causation resulting from the defendant's wrong, and made the plaintiff's injury its own. A verdict should have been ordered for the defendant.

This conclusion makes it unnecessary to pass upon the other questions raised by the exceptions.

*Judgment reversed, and judgment for the defendant.*

NOTE. MR. JUSTICE WILLCOX sat at the argument of this case, but took no part in the decision.