**Bernard SCHATZ**

v.

**Raymond CUTLER et al.**

**Civ. A. No. 74–116.**

United States District Court, D. Vermont.

May 19, 1975.

Black & Plante, White River Junction, Vt., for plaintiff.

John S. Burgess, Brattleboro, Vt., Miller & Hill, Rutland, Vt., for defendants Jenkins & LaFlam.

Robert F. Bates, Newfane, Vt., for defendant Cutler.

Ryan, Smith & Carbine, Rutland, Vt., for Cronan & Doyle.

Ainsworth & Richards, Springfield, Vt., for LaFlam.

## MEMORANDUM AND ORDER

HOLDEN, Chief Judge.

This is a diversity action arising out of an automobile collision between two cars, one driven by the plaintiff, Bernard Schatz, and the other driven by the defendant, Raymond Cutler. At the time of the accident, the vehicle driven by Cutler was being pursued by three police cruisers, driven by the defendants, State Trooper James Cronan, State Trooper Richard F. Doyle, and Brattleboro Policeman Frank A. LaFlam. The case is presently before the court on the motions for summary judgment of defendants Cronan, Doyle, Jenkins and LaFlam.[1]

The moving defendants contend that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law because their actions were not negligent, and were not the proximate cause of the plaintiff's injuries. For the reasons which follow, the motions for summary judgment of defendants LaFlam, Cronan and Doyle are denied; the motion for summary judgment of defendant Jenkins is granted.

The facts gathered from the present record are that in the early evening of April 9, 1973, Officer Frank A. LaFlam of the Brattleboro Police Department responded to a call by one Arthur Martel, who complained of the dangerous operation of a motor vehicle and the suspicious actions of persons to him unknown. Officer LaFlam drove to Lamson Street, where he observed two cars, both with Florida license plates, one of which was filled with young people. As soon as the driver of the occupied vehicle, later determined to be the defendant Raymond Cutler, saw Officer LaFlam, he rapidly changed direction and drove away. Officer LaFlam pursued him in his cruiser and was, at LaFlam's request, joined by another Brattleboro Po-

lice Department cruiser driven by the defendant Officer Gary Jenkins. The three vehicles proceeded out of Brattleboro and west on Route 9 with Cutler's car in the lead, followed by that of Jenkins and then LaFlam. Route 9, west of Brattleboro, is a winding, hilly road which is generally two lanes, although it occasionally widens into three lanes for passing on hills.

Despite attempts to pass the Cutler vehicle, the Brattleboro policemen were unable to do so because Cutler veered to the left each time, thereby blocking the road. Near the intersection of Route 9 and Meadowbrook Road. Officer Jenkins pulled beside Cutler, who then swung left, causing his vehicle to strike the right side of Jenkins' cruiser. Jenkins' cruiser went out of control and slid to a stop in front of the Cutler vehicle. Officer LaFlam pulled in behind Cutler, blocking him between the two police cruisers. When Officer LaFlam got out of his car and approached the Cutler vehicle, Cutler drove forward into Jenkins' cruiser, reverse into the rear vehicle and then out on the roadway again. Officer Jenkins was unable to follow, due to his own personal injuries and the damage to his vehicle, but Officer LaFlam resumed the chase.

As the two vehicles sped past the Vermont State Police sub-station on Route 9, Troopers Cronan and Doyle observed Officer LaFlam motion for assistance so they joined in the pursuit, driving separate cruisers. Trooper Cronan assumed the lead position, followed by Trooper Doyle, then Officer LaFlam. As before, Cutler prevented any attempts by the cruisers to pass by veering left and blocking the road. At a point where Route 9 widens into three lanes, several miles beyond the state police headquarters, Trooper Cronan pulled alongside Cutler, at which time Cutler repeated his previous action of swinging left and intentionally striking

---

1. The Vermont Department of Public Safety and the Town of Brattleboro were also originally joined as defendants. However, this court has previously granted their respective motions to dismiss.

the cruiser.[2] Trooper Cronan's vehicle went off the southern side of the road while Cutler's car collided head-on in the eastbound lane with the automobile driven by the plaintiff. Trooper Doyle and Officer LaFlam pulled their cruisers to a stop without becoming involved in the accident, so the only vehicle which actually came into physical contact with the car driven by the plaintiff was that of defendant Cutler.

■■ On these facts all of the defendants, except the fugitive Cutler, seek to be relieved of liability as a matter of law by way of summary judgment. The plaintiff's complaint alleges that his injuries were due to the joint and several negligence and recklessness of all the defendants. Since this case is a diversity action, the substantive issues of law are to be determined in accordance with the law of Vermont. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, the issue of whether a police officer can be held liable for the injuries of a person whose car is struck by another driven by an individual lawbreaker being pursued by the police, when the police vehicle does not come into any physical contact with the injured's car, appears to be one of first impression in this state. Consequently, this court is required to decide the issue in the manner in which it predicts the highest state court would decide the question were it faced with the identical situation. *See* Marra v. Bushee, 447 F.2d 1282 (2d Cir. 1971). Other jurisdictions are divided on the question.[3]

Shortly before this accident 23 V.S.A. § 1015 was added to the motor vehicle law. 1971, No. 258 (Adj.Sess.) § 3 eff. March 1, 1973.

(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when responding to, but not returning from, a fire alarm and a law enforcement officer operating an authorized emergency vehicle in fresh pursuit of a suspected violator of the law, may

(1) Park or stand contrary to the provisions of this chapter;

(2) Proceed past a red or stop signal or stop sign;

(3) Exceed the maximum speed limits;

(4) Disregard regulations governing direction of movement or turning in specified directions.

(b) The exemptions granted to an authorized emergency vehicle apply only when the vehicle is making use of audible or visual signals meeting the requirements of this title.

(c) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

■ While this recent enactment, so far as the court can find, has not been construed by the Vermont Supreme Court, it seems clear that the operator of an emergency vehicle in fresh pursuit is relieved from certain safety rules and regulations. He is called upon to drive with due care under the circumstances and is not protected "from the consequences of his reckless disregard for the safety of others." *Id.* Reckless disregard for the safety of others is the equivalent of gross negligence. *See* Rivard v. Roy, 124 Vt. 32, 35, 196 A.2d 497 (1963). The absence or presence of such aggravated negligence in Vermont usually presents a question for the jury. *Id. Accord,* Conway v. O'Brien, 312 U.S. 492, 495, 61 S.Ct. 634, 85 L.Ed.

---

2. The facts are not clear as to whether Trooper Cronan's vehicle was in the westbound passing lane or the eastbound lane at the time his vehicle was struck by that of Cutler. As will be discussed subsequently, the resolution of this factual issue is to be left to the jury.

3. *See* Annot., 83 A.L.R.2d 452 (1962) and cases cited therein.

969 (1941). According to the law of this jurisdiction—

> Negligence may lie in the creation of a dangerous situation, although the final injury is activated by the conduct of a third person.—Where there is likelihood of harm from an intentional or reckless act of an outsider, the actor who creates the situation of danger may be held responsible for the act of the immediate wrongdoer (citations omitted). Bessette v. Humiston, 121 Vt. 325, 326–327, 157 A.2d 468, 470 (1960).[4]

As for causation—

> Whenever the separate and independent acts or negligence of several persons, by concurrence, produce a single and indivisible injury which would not have occurred without such concurrence, each is responsible for the entire result, and they may be sued jointly or severally, at the election of the party injured. In such cases, *the act or neglect of each is a proximate and an efficient cause* . . . [emphasis added]. Town of Sharon v. Anahama Realty Corp., 97 Vt. 336, 338, 123 A. 192 (1924); cited with approval in Wagner v. Village of Waterbury, 109 Vt. 368, 376–377, 196 A. 745 (1938). *Accord,* Johnson v. Cone, 112 Vt. 459, 28 A.2d 384 (1942).

In *Wagner* a child pedestrian was struck and killed by an automobile which skidded on ice caused by water leaking onto the street from a water pipe maintained by the Town of Waterbury. There the Vermont Supreme Court held that the jury might properly find that the Town of Waterbury's negligence in allowing the ice formation was a proximate cause of the accident, even though the negligence of the driver of the automobile which actually struck the child was a contributing factor. Likewise, in the case before this court, a jury might find that the law enforcement officers aggravated negligence, in continuing the high speed pursuit of Cutler, was a proximate cause of the collision, even though Cutler's negligence may have been the predominant factor. On the present state of the record there appears to be genuine issues of fact concerning causative aggravated negligence of the defendants Cronan, Doyle and LaFlam.

▮ Gary Jenkins stands differently. Although this defendant was involved in the initial pursuit, it is undisputed that he did not continue the chase after his cruiser was in collision with Cutler's vehicle. Officer Jenkins' inability to maintain the pursuit may have been involuntary due to his injuries and the condition of his cruiser. If it could be said that the defendant was initially reckless, which of course the court does not decide, any negligence on his part was too remote in time and place from the actual collision to have formed a part of the proximate cause of the ultimate injury. Any danger created by Officer Jenkins had "spent itself, and there [was] no causal connection between it and what [followed]." *See* Beatty v. Dunn, 103 Vt. 340, 344, 154 A. 770 (1931). *Accord,* Evanoff v. City of Madeira Beach, 186 So.2d 70 (Fla. Dist.Ct.App.1966), (summary judgment for defendant police officers appropriately granted when, at time of accident,

---

4. As authority for the previous sentence, the Vermont Supreme Court cited Lillie v. Thompson, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73 (1947), in which the United States Supreme Court held that a complaint alleging the failure of an employer to maintain reasonably safe premises for a nighttime employee stated a good cause of action for recovery of damages due to injuries perpetrated upon the employee by a criminal intruder.

The United States Supreme Court stated that a duty arose to prevent foreseeable danger, even if that danger were from intentional or criminal misconduct. The same may be said regarding the present case—the defendant law enforcement officers pursuing Cutler were under a duty to prevent foreseeable danger to other persons, even if that danger arose as a result of Cutler's intentional and criminal misconduct.

police no longer participating in chase because vehicle was previously disabled.)

Accordingly, it is hereby ordered:

1. *That the summary judgment motions of defendants Cronan, Doyle and LaFlam are denied; and*

2. *That the summary judgment motion of defendant Jenkins is granted.*