NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 91

No. 2016-326

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Criminal Division |
| | |
| Ty Baker, Sr. | May Term, 2017 |

A. Gregory Rainville, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Rebecca Turner and Amanda Isaacs,
  Appellate Defenders, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **EATON, J.** On May 3, 2016, Ty Baker, Sr. pleaded no contest to grossly negligent operation in violation of 23 V.S.A. § 1091(b) after his car collided with and totaled another car. Husband and wife owned the car and wife was driving the car when the accident occurred. Following his conviction and a contested restitution hearing, Baker was ordered to pay $828.88, which were lost wages for husband, who was not in the car at the time of the collision. Baker appeals the restitution order, arguing that husband does not qualify as a "victim" under the restitution statute, that the lost wages were not a "direct result" of defendant's crime, and that the State's evidence was insufficient to prove the amount of restitution. 13 V.S.A. § 5301(4); 13 V.S.A. § 7043. We hold that even if husband was a victim under the restitution statute, his lost wages were not a direct result of defendant's criminal act and therefore fall outside the scope of

Vermont's restitution statute, 13 V.S.A. § 7043. Accordingly, we reverse and vacate the restitution order.

¶ 2.     The facts are as follows. On September 4, 2015, Baker was driving his vehicle in Swanton when he crossed the center line and collided with an oncoming car driven by wife. Wife and her children, who live in Massachusetts, were driving to Vermont for vacation. Husband had stayed home to work, but upon hearing of the accident, he left work about half-way into his shift to come to Vermont. Husband was working weekend shifts that lasted twelve hours—4:30 p.m. to 4:30 a.m.—so before driving to Vermont on September 4 to pick up his family, he slept for a few hours. He arrived in Vermont on September 5 and attended to various issues associated with the accident, including matters concerning the police, insurance, and retrieving personal items from the damaged car. The family returned to Massachusetts together on September 6. In total, husband missed 29.25 hours of work, resulting in lost wages of $828.88. Insurance did not cover his lost wages.

¶ 3.     The court held a restitution hearing on September 7, 2016. The court first found that husband qualified as a "victim" under the restitution statute, reasoning that he was a joint owner of the totaled car and therefore suffered financial injury as a direct result of the crime. The court then considered whether husband's lost wages were compensable under the restitution statute. The court reasoned that, although the family initially came to Vermont for vacation, Baker's crime "changed the nature of their visit entirely"; the time that husband took away from work was to deal with matters directly caused by Baker's crime. Thus, it concluded, husband's lost wages were a direct result of Baker's crime and therefore compensable under the restitution statute. Finally, the court determined the amount of restitution. It noted that there was no evidence at the time of husband's decision to drive to Vermont that Baker's insurance would cover a rental car or would even accept liability, and the court ordered restitution for the full amount claimed of $828.88. The court refused to consider any testimony or argument that husband could have lessened the time he missed from work. This appeal followed.

¶ 4.    On appeal, Baker challenges the restitution order on three bases. First, he argues that husband is not a "victim" under the restitution statute. Second, he argues that husband's lost wages were not the "direct result" of his crime. Finally, he argues that the State's evidence is insufficient to prove the amount of restitution, and specifically, he contests the court's finding that husband's three days of lost work was reasonable based on sufficient, credible evidence.

¶ 5.    Baker's first argument, that husband is not a "victim" for purposes of restitution, requires us to interpret the restitution statute, 13 V.S.A. § 7043, and its incorporated definition of "victim." 13 V.S.A. § 5301(4). Our review is therefore de novo. State v. Gorton, 2014 VT 1, ¶ 8, 195 Vt. 460, 90 A.3d 901. In the absence of ambiguity, "we enforce the statute according to its terms." Payne v. U.S. Airways, Inc., 2009 VT 90, ¶ 24, 186 Vt. 458, 987 A.2d 944.

¶ 6.    Here, the statutory language is explicit with respect to who qualifies as a victim: "victim" is defined as "a person who sustains physical, emotional or financial injury or death as a direct result of the commission or attempted commission of a crime or act of delinquency." 13 V.S.A. § 5301(4); see also id. § 7043(a) (incorporating the definition of "victim" in § 5301(4)). The statute narrows the category of victims eligible to receive restitution to those who have "suffered a material loss." 13 V.S.A. § 7043(a)(1). "Material loss," in turn, is "uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses." Id. § 7043(a)(2). Thus, "victim" and "material loss" are distinct concepts. While an individual may qualify as a victim for purposes of restitution, a victim will be eligible for restitution only if, and to the extent that, he or she has suffered a "material loss."

¶ 7.    Here, husband qualifies as a victim under the restitution statute because he sustained financial injury through his ownership interest in the damaged car.[1] This conclusion is

---

[1]    Defendant challenges the sufficiency of the evidence concerning ownership of the damaged vehicle, in particular because of wife's "belief" as to ownership. Because the resolution of this issue does not affect the outcome of our decision, we assume husband and wife to be joint owners of the car.

in line with our previous decisions. For example, in <u>State v. Morse</u>, the defendant crashed his truck into a car owned by the car driver's mother. 2014 VT 84, ¶ 22, 197 Vt. 495, 106 A.3d 902. While not stating it explicitly, we defined the mother as a victim for purposes of restitution and affirmed the trial court's order of restitution for damage to the car. <u>Id</u>. Here, wife testified at the restitution hearing that she believed she and husband were joint owners of the vehicle involved in the accident and that both of their names were listed on the vehicle's insurance, and the court found those statements to be credible. Just as in <u>Morse</u>, the accident for which Baker was convicted damaged husband and wife's vehicle, meaning that husband suffered financial loss as a direct result of the crime. See also <u>State v. Jarvis</u>, 146 Vt. 636, 638, 509 A.2d 1005, 1006 (1986) (noting that recoverable losses "include, but are not necessarily limited to, hospital bills, <u>property value</u>, and lost employment income" (emphasis added)). Our conclusion that husband qualifies as a victim due to his financial loss in the vehicle does not mean that the lost wages he claims are recoverable in restitution. We must still consider whether his lost wages qualify as a "material loss" that can be recovered via restitution because his wage loss was directly related to the criminal act. [2]

¶ 8.    Baker argues that husband's lost wages were not properly recoverable via restitution because they were not directly linked to his crime as required by the restitution statute's definition of "victim" as a person who has suffered injury "as a <u>direct result</u> of the commission . . . of a crime." 13 V.S.A. § 5301(4) (emphasis added). The State, on the other hand, argues that husband's decision to drive to Vermont was reasonable, stemming from circumstances that were the "natural and probable consequence[s]" of Baker's crime. This appeal, thus, hinges on what constitutes a "direct result," and specifically, on what form of causation the statute requires.

---

[2] Because insurance paid the full cost of replacing the totaled vehicle, neither party contests that the vehicle was not a "material loss" under the restitution statute. See 13 V.S.A. § 7043(a)(2) (" '[M]aterial loss' means uninsured property loss.").

4

¶ 9. The State's argument is that reasonable actions taken in response to the natural and probable consequences of a crime are recoverable via restitution. This argument essentially asks us to use a but-for standard of causation. By asking us to accept that restitution is appropriate because "[t]hey needed to deal with the aftermath of the accident," the State is arguing that results, such as husband's lost wages that would not have occurred but for a crime, and reasonable efforts to deal with those results fall within the purview of the restitution statute. We have, however, already interpreted the phrase "direct result" in the restitution context to require something more than but-for causation. See State v. LaFlam, 2008 VT 108, ¶¶ 8, 11, 184 Vt. 629, 965 A.2d 519 (mem.) (declining to find direct link and rejecting but-for causation as "the sole standard for causation for restitution in Vermont"). "But-for" causation is satisfied if an injury "would not have occurred 'but for' the defendant's conduct." Collins v. Thomas, 2007 VT 92, ¶ 8, 182 Vt. 250, 938 A.2d 1208; see also Cause, Black's Law Dictionary (10th ed. 2014) (defining "but-for" causation as "[t]he cause without which the event could not have occurred"). The scope of restitution, however, is much narrower. See State v. Forant, 168 Vt. 217, 222, 719 A.2d 399, 402 (1998) ("The statute is narrowly drawn . . . ."). "If there is no direct link between the crime and the restitution, the claimed damage may not be awarded under § 7043." Id. at 223.

¶ 10. As we have previously explained, "direct result" or "direct link" means that there must be proximate cause between the criminal act and the losses claimed. See LaFlam, 2008 VT 108, ¶ 11 (requiring "some form of proximate causation in addition to causation in fact"). In general, injuries that are the proximate cause of a defendant's crime are those "which are natural and probable, and ought to have been foreseen." Shanley v. Hurley, 96 Vt. 119, 123, 117 A. 250, 251-52 (1922). See also Johnson v. Cone, 112 Vt. 459, 462, 28 A.2d 384, 387 (1942) (noting that for negligence action to satisfy proximate cause, a "prudent man . . . would have regarded injury to the plaintiff or one of the class to which she belonged, as likely to result from the act or omission complained of"). It requires that "the act or omission of the defendant" be reasonably connected to damages or losses incurred by a plaintiff. Clymer v. Webster, 156 Vt. 614, 632, 596 A.2d 905,

5

915-16 (1991). Thus, the hallmark feature of proximate causation, and what distinguishes it from but-for causation, is reasonable foreseeability. See id. ("[The proximate causation analysis] often depends on the foreseeability of [damages or losses]."); Morris v. Am. Motors Corp., 142 Vt. 566, 572, 459 A.2d 968, 971 (1982) (noting that because "breach must be part of the proximate cause" of injury, injury "must be foreseeable"); 2 Owen & Davis on Products Liability § 12:3 (4th ed. 2017) ("The most widely accepted criterion for assessing whether conduct . . . [is] the proximate cause of the harm is whether the harm suffered was reasonably foreseeable."); Cause, Black's Law Dictionary (10th ed. 2014) (" 'The four "tests" or "clues" of proximate cause in a criminal case are (1) expediency, (2) isolation, (3) foreseeability and (4) intention.' " (quoting R. Perkins & R. Boyce, Criminal Law 823 (3d ed. 1982))).

¶ 11.    And although proximate cause analysis has traditionally been limited to civil cases, reasonable foreseeability is an appropriate standard for criminal restitution cases as well. In fact, reasonable foreseeability has been a part of this Court's past restitution decisions. In State v. LaFlam, for example, the defendant was convicted of driving with a suspended license after he drove his vehicle through the front door of the victim's store. 2008 VT 108, ¶ 7. We held that the crime for which the defendant was convicted—license suspension—had an insufficient causal connection to the harms for which the State sought restitution. Id. ¶ 13. In other words, it was not reasonably foreseeable that driving without a license would lead to damage to the victim's store because even if the defendant was "[d]riving without a license, [he] could have driven negligently or safely." Id. Had there been "a direct link between the loss for which restitution is ordered and the conduct for which defendant has been convicted," we suggested, the loss would have been foreseeable and a restitution award appropriate. Id. ¶ 17. Similarly, in State v. Forant, we suggested that the claimed losses were too far removed from the defendant's conviction and, thus, unforeseeable. 168 Vt. at 223, 719 A.2d at 403. In Forant, the defendant was convicted of domestic assault and, because of the assault, the victim changed her locks and phone number. Id. We vacated the restitution order, which included the costs to the victim of changing her locks and

6

phone number, because those expenditures, "although real, were related to fear of future crimes, not the crime for which defendant was convicted." Id. The losses were "indirect costs," associated with the intervening fear that arose from the crime, but not proximately caused by the crime itself. Id.

¶ 12. Examining the purposes of restitution strengthens our conclusion that reasonable foreseeability is a necessary component of restitution's proximate causation analysis. We have established that restitution is not punishment. See State v. Bohannon, 2010 VT 22, ¶ 6, 187 Vt. 410, 996 A.2d 196. It is, however, part of a criminal sentence. 13 V.S.A. § 7043(o) ("An obligation to pay restitution is part of a criminal sentence . . . ."); Morse, 2014 VT 84, ¶ 14 ("Restitution is part of sentencing . . . ."). A sentence, by its terms and conditions, must reflect the nature of the crime committed and be "consistent with the purposes of sentencing." State v. Thompson, 150 Vt. 640, 645, 556 A.2d 95, 99 (1989). Thus, when restitution is ordered, it addresses, to some degree, the goals of sentencing and, more broadly, criminal justice. Those goals include rehabilitation and deterrence. See State v. Allen, 2010 VT 47, ¶ 14, 188 Vt. 559, 1 A.3d 1003 (mem.) (listing "legitimate goals of criminal justice" as including "prevention, rehabilitation, and deterrence" (quotation omitted)); see also State v. Breeden, 932 P.2d 936, 939 (Idaho 1997) ("A restitution requirement facilitates rehabilitation by confronting the defendant with the consequences of his or her criminal conduct . . . [and] promote[s] public safety by exacting a 'price' for the crime, which may deter the defendant and others from such offenses."); State v. Hval, 25 P.3d 958, 966, 968 (Or. Ct. App. 2001) (interpreting restitution statute similar to Vermont's and reasoning that "[i]nherent in the sound exercise of sentencing discretion is a trial court's consideration of the deterrent and rehabilitative effects of the sentence" and that by making restitution part of sentencing, "the legislature implicitly requires consideration of the award's deterrent and rehabilitative effects").

¶ 13. Thus, restitution—at least to some extent—furthers the goals of rehabilitation and deterrence. To effectively accomplish those goals, however, restitution required due to a criminal

act must be foreseeable. This is because a defendant and others must be able to reasonably foresee the resulting injuries of an act if they are to be deterred by a potential restitution order from engaging in that act. Cf. Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc., 36 F.Supp.2d 560, 580 (E.D.N.Y. 1999) ("Foreseeability is relevant to the issue of deterrence because predictable harms can be prevented ex ante."). Similarly, part of rehabilitation is helping defendants learn to understand the consequences of future actions, which is directly tied to the foreseeability of those consequences. Cf. Huggett v. State, 266 N.W.2d 403, 407 (Wis. 1978) ("Restitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility. The probationer may learn to consider more carefully the consequences of his or her actions."). Therefore, a foreseeability requirement within the proximate cause analysis is necessary in order for a restitution order to satisfy the underlying objectives of a criminal sentence. As one court explained in summarizing decisions from other jurisdictions, "courts usually arrive at the 'direct result' determination [in restitution cases] by employing a 'foreseeability' or 'natural consequence[s]' analysis similar to the causation determination in civil cases." State v. Morris, 839 P.2d 434, 437 (Ariz. Ct. App. 1992); see also State v. Ramos, 368 P.3d 446, 458 (Ore. 2016) (requiring that losses recovered via restitution "must 'result from' a defendant's criminal activity in the 'but-for' sense and also must be a reasonably foreseeable result of the defendant's criminal activities").

¶ 14. Additionally, although the foreseeability analysis is similar to the causation test in the civil context, it is clear that criminal restitution requires a narrower reading of causation. First, we require the State to prove that a victim's loss is directly related to the conduct that is the subject of the actual crime for which the defendant was convicted. In other words, even if a defendant's conduct harms a victim, the defendant cannot be ordered to pay restitution for that harm unless the defendant's conduct—and resulting injury to the victim—also lead to a conviction. See State v. Knapp, 147 Vt. 56, 60, 509 A.2d 1010, 1012 (1986) (noting that there must be "vital link-up" between restitution order and "damage caused by the criminal conduct for which the defendant

8

was convicted"); State v. Charbonneau, 2016 VT 83, ¶¶ 15, 17, ___ Vt. ___, 152 A.3d 462 (reversing trial court's decision to order restitution for items reported as stolen during a burglary but not found in defendant's possession because "there is no connection between the crime for which defendant was convicted—possession of stolen property—and the crime that resulted in the victims' loss—burglary"). Implicit in this requirement is that restitution is limited to compensating victims for harm that defendants can reasonably predict will be part of his or her sentence based only upon the conviction and not the broader set of factual information which might be part of an investigation. In other words, because restitution is triggered by a conviction, the harm for which a defendant pays restitution must be a directly foreseeable result of the criminal act that leads to a conviction.

¶ 15. Second, a narrower foreseeability requirement is necessary because the tools a defendant has at his or her disposal to challenge restitution at a contested hearing are limited. For example, the restitution statute does not allow a defendant to request a jury determination of the amount of restitution; instead, the court has discretion in determining the amount of restitution for losses that need only be estimated to a reasonable certainty. 13 V.S.A. § 7043(d)(1), (g)(1) (referring to "sufficient documentation of the material loss" and referencing trial court's discretion by requiring that "[w]hen restitution is requested but not ordered, the Court shall set forth on the record its reasons for not ordering restitution"); State v. Driscoll, 2008 VT 101, ¶ 8, 184 Vt. 381, 964 A.2d 1172 ("The trial court has discretion in determining the amount of restitution, and only a reasonable certainty of estimated loss is required."). Similarly, the Rules of Evidence do not apply at a restitution hearing and hearsay is admissible. See Morse, 2014 VT 84, ¶¶ 13-14 ("Rules of Evidence do not apply in restitution proceedings" and "there is no constitutional bar to admission of hearsay at restitution."). Thus, a more stringent foreseeability requirement is

9

necessary to limit what losses a victim can recover in accordance with the limited scope of restitution and the defendant's restricted ability to contest restitution.[3]

¶ 16. A proximate cause analysis, even with a stricter foreseeability test, is not the end of the "direct result" inquiry. Restitution is also not meant to cover losses that are consequential to or incidental to the crime. Forant, 168 Vt. at 225, 719 A.2d at 404 ("[O]ur own restitution statute . . . [implies] that consequential economic losses are not permitted."). This is because such losses are not liquidated sums, and only those losses that are easily ascertainable are permissibly recoverable in restitution. Id. at 222, 719 A.2d at 402; Jarvis, 146 Vt. at 638, 509 A.2d at 1006 ("[O]nly liquidated amounts which are easily ascertained and measured are recoverable . . . ."). Related is our determination that "pain and suffering, emotional trauma, loss of earning capacity, and wrongful death awards are not proper subjects of restitution." Forant, 168 Vt. at 222, 719 A.2d at 402. While certainly foreseeable under a traditional proximate cause analysis and likely

---

[3] The State's reliance on State v. Shepherd for the proposition that we have recently relaxed the proximate cause standard in the restitution context is misplaced because of the unique factual circumstances that gave rise to that case. To extend the Shepherd precedent beyond those unique factual circumstances would stretch the intent of the restitution statute beyond its bounds. In Shepherd, the defendant pled guilty to aggravated sexual assault, lewd and lascivious conduct with a child, and sexual exploitation of a child. The case attracted media attention, and the juvenile victim's identity became known at the victim's school and within the victim's small community. The family, along with the victim's counselor, concluded that it was necessary to relocate. They chose to move to Hawaii based on several factors, including being close to family. The trial court awarded restitution to the victim's family for their relocation costs. We affirmed, reasoning that the victim's "emotional injury and ostracization in a small town were the natural and probable consequences of the sexual assaults, thereby necessitating relocation." State v. Shepherd, 2012 VT 91, ¶ 9, 192 Vt. 494, 60 A.3d 213. In concluding, we noted "the grievous nature of the crime in question, as well as its profound effect on the victim." Id. ¶ 13.

While Shepherd used a less stringent "natural consequences" test that extended the causal chain to consequential losses, the case turned on the egregiousness of the crime, the unique circumstances of the victim's situation, and the ascertainable emotional nature of the victim's injury. In fact, we noted in Shepherd that "[i]n general, a proximate-cause analysis is appropriate in determining whether restitution should be granted" before we made the exception based on the grievousness of the crime. Id. ¶ 9. We decline to extend Shepherd's outer boundary to cases that do not exhibit the unique characteristics of that case, particularly to those cases in which a victim has suffered only financial loss. In nearly every restitution case, the question will be whether the loss relates directly to the crime for which the defendant has been convicted, via a direct proximate causation analysis based on reasonable foreseeability.

under restitution's more stringent foreseeability analysis, Vermont's restitution statute does not sweep losses stemming from pain and suffering or other downstream injuries into a restitution order. Thus, these limitations, in addition to the statutory restrictions noted above, distinguish the "direct result" test from both but-for causation and the traditional tort law proximate cause analysis.

¶ 17. The overall narrow scope of restitution and the rigid "direct result" requirement is further illustrated by the statute's silence regarding whether the defendant may submit evidence of the victim's failure to mitigate and, generally, the incapacity of the trial court to decide issues of mitigation. If the foreseeability analysis were like that in the civil context, and the "direct result" test not a further limitation, trial courts would be forced to consider not only the scope of harm resulting from a defendant's crime, but also whether and when a victim has a duty to mitigate that harm. The facts of this case are illustrative. If we accept that husband is entitled to restitution for lost wages because the car accident was simply related to him missing work, the question would transition into an analysis of whether husband acted reasonably in missing work and to what extent he could have chosen less costly alternatives. See Langlois v. Town of Proctor, 2014 VT 130, ¶ 22, 198 Vt. 137, 113 A.3d 44 ("Under the mitigation of damages doctrine . . . a plaintiff may not recover for any damages that the plaintiff could have avoided or minimized through reasonable care or expenditure."). That sort of inquiry exceeds the narrow scope of restitution and would move restitution hearings a step closer to a tort damages hearing. This is not within the reach of the statute.[4] See 13 V.S.A. § 7043(c)(2), (d) ("[T]he prosecuting attorney shall provide . . . statement of the amount of restitution claimed . . . [and] copies of bills that support the

---

[4] The statute only contemplates that the defendant will provide information regarding his or her ability to pay, but the statute does not require the defendant to do so. If the defendant does not offer evidence of an inability to pay, the State must carry the burden in establishing an ability to pay. See 13 V.S.A. § 7043(d)(2) (requiring court to make finding with respect to "[t]he offender's current ability to pay . . . [based on information] including [that] provided by the offender"); State v. Kenvin, 2011 VT 123, ¶ 17, 191 Vt. 30, 38 A.3d 26, overruled on other grounds by State v. Aubuchon, 2014 VT 12, 195 Vt. 571, 90 A.3d 914 ("[I]t is the State's burden to establish defendant's ability to pay if defendant does not offer evidence on his own behalf.").

claim for restitution."); Forant, 168 Vt. at 222, 719 A.2d at 403 ("[T]he State must demonstrate both the amount of the victim's loss and causation . . . ."). A failure-to-mitigate defense puts the burden of proof on the party raising the defense, which would be the defendant, not the State, in a restitution proceeding. See Cartin v. Cont'l Homes of N.H., 134 Vt. 362, 367, 360 A.2d 96, 100 (1976) ("[T]he burden of showing [that mitigation] could have been done is on the party asserting it."). Thus, had the Legislature contemplated that a defendant would raise mitigation as a defense in a restitution hearing, it likely would have included language to that effect and similarly would have addressed the State's discovery rights related to mitigation. These two omissions from the statute are informative concerning the scope of restitution contemplated. Cf. Fraser v. Sleeper, 2007 VT 78, ¶ 12, 182 Vt. 206, 933 A.2d 246 ("We interpret statutes to avoid absurd and illogical results . . . in favor of reasonable construction . . . ."). Thus, Vermont's "direct result" test is, and must be, narrow enough that courts need not reach issues of mitigation. To hold otherwise would be one step closer to turning a restitution hearing into a civil damages trial.

¶ 18. In sum, the "direct result" test is a narrow analysis that utilizes a stringent reasonable foreseeability proximate causation standard, coupled with further limitations such as the exclusion of unliquidated and difficult-to-ascertain losses. This narrow test is implicit in our prior restitution decisions. In State v. Thomas, for example, we found that a hospital had only been indirectly affected by the defendant's aggravated assault when the victim had left the hospital with outstanding bills for treatment of the injuries he sustained as a result of the defendant's crime. 2010 VT 107, ¶¶ 6, 17-18, 189 Vt. 106, 14 A.3d 961. We determined that the hospital's loss was too far removed from the defendant's crime and held that the hospital was not eligible to receive restitution as a "direct victim." Id. While the hospital's loss would likely qualify as a foreseeable consequential loss in an ordinary proximate cause analysis, we found it to be outside the boundaries of restitution's strict foreseeability test and its recovery prevented by the inherent limitations of the restitution statute. See also State v. Kenvin, 2011 VT 123, ¶ 9, 191 Vt. 30, 38 A.3d 26, overruled on other grounds by State v. Aubuchon, 2014 VT 12, ¶ 21, 195 Vt. 571, 90 A.3d 914.

12

(finding that certain downstream losses incurred by the family of the decedent victim were too distant from the crime to qualify as a "direct result"); Bohannon, 2010 VT 22, ¶ 12 (noting that "the link between the crimes of unlawful restraint and assault to the extradition costs incurred by the DOC is simply too tenuous to trigger restitution," even though they were related and satisfied but-for causation); Forant, 168 Vt. at 225, 719 A.2d at 404 (reasoning that even if the victim's losses were related to the defendant's crime, and despite the fact that the victim reduced her damages to a specific amount, her losses were indirect because they were consequential and not ascertainable under § 7043); Jarvis, 146 Vt. at 639-40, 509 A.2d at 1007 (denying recovery of pain and suffering because of its uncertain nature and noting that the "evaluation of such losses is best left to the civil trial judge and to the collective wisdom of civil juries").

¶ 19.   Indeed, we have stated that "[a] restitution order in a criminal case is not the same as, and is no substitute for, an award of civil damages." Jarvis, 146 Vt. at 640, 509 A.2d at 1007. The "direct result" language limits losses recoverable via restitution in order to ensure compliance with this principle, by way of a stringent reasonable foreseeability test and the further restrictions embedded in the restitution statute.

¶ 20.   Here, the relevant question is whether husband's decision to miss work and drive to Vermont was a "direct result" of Baker's negligent operation. For it to be a "direct result," husband's decision must have been a reasonably foreseeable consequence of Baker's negligent operation, by restitution's standards. In other words, there must have been no disturbance to the causal chain, and his loss must not be barred by the limitations inherent in a restitution proceeding and order. See Beatty v. Dunn, 103 Vt. 343, 340, 154 A. 770, 772 (1931) ("If [the result] is something that, in the eye of the law, the person charged was bound to anticipate, the causal connection is not broken; otherwise, the chain of causation is broken."). Husband's lost wages fail the initial proximate cause test. When Baker drove negligently, it was reasonably foreseeable that his behavior could result in a car accident. Cf. LaFlam, 2008 VT 108, ¶ 13 (suggesting that if a defendant is driving negligently, damage resulting from an accident would be proximately caused

by the negligent driving). It was not, however, reasonably foreseeable that an out-of-state individual not present for the accident would elect to miss work, even if that individual was a co-owner of the vehicle. See, e.g., Wiredu v. State, 112 A.3d 1014, 1024 (Md. Ct. Spec. App. 2015) (interpreting restitution statute similar to Vermont's and declining to allow restitution for victim's wife's lost wages after she quit her job to care for her injured husband because the statute did not allow courts to "award restitution for the lost earnings of others"); Hutchings v. Childress, 2008-Ohio-4568, ¶ 41, 895 N.E.2d 520 (dealing with a situation in which the husband of a woman injured in an automobile accident took off work to care for his injured wife and framing the issue as "one of causation and foreseeability," while reasoning that "[a] tortfeasor who caused an automobile accident would expect to be responsible for paying a mechanic's rate for the repair of a plaintiff's automobile, not the hourly rate of a surgeon who likes to tinker with automotive repair . . . [or] the market rate for the care provided to the injured party, not the wages of a stockbroker who provided that care"). In the civil context, even a plaintiff's own lost wages in dealing with the circumstances created by a defendant's crime have sometimes failed the reasonable foreseeability standard. See, e.g., Senatore v. Wellington, 16 N.Y.S.3d 794, 794 (N.Y. App. Div. 2015) ("[P]laintiff's lost wages for a day spent shopping for a new car [do not] fall within the zone of foreseeability for which a defendant in a negligence action is held to be accountable." (citation omitted)); see also Moriarty v. Augustin, No. A-00-684, 2001 WL 1174000, at *3 (Neb. Ct. App. Sept. 25, 2001) ("[G]enerally, lost profits or lost wages are not considered foreseeable . . . ."). Husband is a victim here because of his financial loss due to the destruction of a car he co-owned with his wife. If his claim was for the damages to the car, there would be no question that he could assert it. But the financial losses husband is claiming were incurred after this crime took place and solely as a result of husband's decision to leave work to deal with the non-immediate repercussions of defendant's crime. Husband's lost wages claim is for indirect losses, which are not recoverable via restitution. See State v. Lewis, 167 Vt. 533, 538,

14

711 A.2d 669, 673 (1998) (noting that restitution is available to "the immediate and intended victims of the crime" (quotation omitted)).

¶ 21.   In this case, intervening circumstances—namely, husband's desire to assist his wife and children—caused husband to miss work.  The loss of his vehicle did not cause him to miss work, and indeed, he was at work when this accident took place.  There was no evidence that he was directly prevented from continuing to work as a result of the accident.  As in Forant, where the crime of domestic assault did not directly cause the victim to change her locks and phone number, it was not the actual crime of grossly negligent operation that caused husband to drive to Vermont.  The relationship between husband's loss and Baker's crime is like that in State v. Kenvin, where restitution could not cover costs to store the decedent victim's motorcycle damaged by the defendant; like the downstream losses in Kenvin, husband's lost wages are consequential to, but not proximately linked in a direct manner, to the crime of grossly negligent operation.  Kenvin, 2011 VT 123, ¶ 9; see also Thomas, 2010 VT 107, ¶ 17 (finding losses to hospital to be indirect, rather than direct, result of defendant's criminal conduct).  Although husband's response to an accident involving his family is certainly understandable, a negligent driver cannot be expected to foresee such intervening circumstances.  See, e.g., Hutchings, 2008-Ohio-4568, ¶ 17 (denying restitution for lost wages of husband who took off work to care for injured wife, because such loss could not have been anticipated); Wiredu, 112 A.3d at 1024 (determining that lost wages of those other than the immediate victim are not compensable via restitution).  Taking this scenario to the extreme, if husband were on a business trip in California at the time of the accident, his claim for restitution could include last-minute airfare to Vermont, hotel and other cancellation fees, and perhaps the monetary consequences of aborting his scheduled business meetings.  Certainly, such sums would fall outside the scope of restitution and would, even if we were to find those losses reasonably foreseeable, require a determination as to the extent that husband's loss was reasonably mitigated, an analysis that is not appropriate in a restitution hearing.  This example reinforces our conclusion that to find husband's losses proper for a restitution award would violate

15

the narrow scope of the restitution statute. Thus, husband's lost wages were not a direct result of defendant's criminal act and thus not proximately caused by the crime for which Baker was convicted. Husband's lost wages are therefore not compensable under Vermont's restitution statute. We vacate the restitution order on that basis.[5]

    Reversed.

FOR THE COURT:

_____

Associate Justice

---

[5] In his third argument, Baker contends that the State did not provide sufficient evidence for the trial court to find the total amount of loss reasonably certain. A trial court has "discretion in determining the amount of restitution, and only a reasonable certainty of estimated loss is required." State v. VanDusen, 166 Vt. 240, 245, 691 A.2d 1053, 1056 (1997). In light of our disposition of the previous question, we do not reach this issue.