Filed 08/18/25



VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 21-CV-00323

---

**Bruce Kelley, et al v. Franklin County Rehab Center, LLC d/b/a Franklin County Rehabilitation Center and d/b/a Franklin County Rehabilitation & Adult Care Center, et al**

---

## ENTRY REGARDING MOTION

Title:  Motion for Summary Judgment; Motion to Join ; Motion for Summary Judgment (Motion: 11; 14)
Filer:  Kaveh S. Shahi; Curtis L. S. Carpenter
Filed Date:  January 30, 2025; March 25, 2025

The motion is GRANTED IN PART and DENIED IN PART.

Defendant Franklin County Rehab Center, LLC and its individually named nurse employees have filed the instant motion seeking summary judgment on the negligence/medical malpractice claims against them by Plaintiffs Bruce and Nancy Kelley.  Defendant Dr. Teig Marco has filed a motion to join this motion.  Based on the review and analysis detailed below, the Court finds that FCRC, in part, and Nurses Jankowski and Perry, in full, are entitled to summary judgment on the issue of causation.  FCRC and Nurse Apley are not entitled to summary judgment regarding the hoyer chair, and their portions of the motion are denied.  Dr. Marco's motion to join is granted, and he is granted summary judgment on the same issues as Nurses Jankowski and Perry.

*Standard for Summary Judgment*

Vermont Rule of Civil Procedure 56 governs motions for summary judgment.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment to as a matter of law."  V.R.C.P. 56(a).  See *Gross v. Turner*, 2018 VT 80, ¶ 8, 208 Vt. 112; *Gilman v. Maine Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 7, 175 Vt. 554.  The moving party must support its assertion with numbered paragraphs with references to materials in the record.  V.R.C.P. 56(c)(1).  The nonmoving party must show that the material facts are in dispute.  *Boyd v. State*, 2022 VT 12, ¶ 19, 216 Vt. 272.  The nonmoving party does this through

introducing their own admissible evidence. *Gross*, 2018 VT 80, ¶ 8. Additionally, the court gives the nonmoving party the benefit of reasonable doubts and inferences. *Brousseau v. Brousseau*, 2007 VT 77, 182 Vt. 533. If the court determines there are no genuine issues of material fact, the court will grant summary judgment. V.R.C.P. 56.

*Scope of Defendants' Motion for Summary Judgment*

Defendants describe the focus of the present motion as an examination of "plaintiff's ability to meet his burden by competent expert opinion on the element of causation." Pltf. Mot. for Sum. J. at 2 (Jan. 30, 2025). Defendants later note "the only question on this motion is whether it can be said with a reasonable degree of medical probability that but-for some act or omission by FCRC staff, Mr. Kelley would be walking with all his lower extremity sensation intact." Pltf. Reply in Support of Mot. for Sum. J. at 4 (May 5, 2025).

The nature of Defendants' motion is focused solely on the issue of "but for causation."[1] *Wilkins v. Lamoille County Mental Health Services, Inc.*, 2005 VT 121, ¶¶ 12–14. This standard requires Plaintiff to prove that the injury "would not have occurred 'but for' the defendant's conduct." *Collins v. Thomas*, 2007 VT 92, ¶ 8. But for causation is different than "proximate causation. As Justice Dooley explains:

> [T]he plaintiff must first show that the harm would not have occurred "but for" the defendant's conduct such that the "tortious conduct [was] a necessary condition for the occurrence of the plaintiff's harm." [*Wilkins*, 2005 VT 121, at ¶ 13 (quoting Restatement (Third) of Torts § 26, cmt. j (2005)).] The plaintiff must also show that the defendant's negligence was "legally sufficient to result in liability," BLACK'S LAW DICTIONARY 234 (8th ed.2004) (defining proximate cause), such that "liability attaches for all the injurious consequences that flow [from the defendant's negligence] until diverted by the intervention of some efficient cause that makes the injury its own." *Beatty v. Dunn*, 103 Vt. 340, 343, 154 A. 770, 771 (1931)

Id. In other words, "but for" causation is the necessary, factual, and causative connection between a defendant's action and the resulting injury while proximate causation is the legal limitation imposed by courts between action and injury, where time and other intervening events may push the party's initiating actions aside as the closest or primary cause of the injury. *Palmer v. Furlan*, 2019 VT 42, ¶ 8.

---

[1] As a result, the Cour will, solely for the purposes of the present motion, assume that Plaintiffs have met their burden of establishing both a duty of care and breach of that duty for each of the defendants on each of the issues discussed.

Entry Regarding Motion                                                                                              Page **2** of **8**
21-CV-00323 Bruce Kelley, et al v. Franklin County Rehab Center, LLC d/b/a Franklin County Rehabilitation Center
and d/b/a Franklin County Rehabilitation & Adult Care Center, et al

The general rule in medical malpractice cases and complex negligence cases is that "plaintiffs must generally use an expert witness to satisfy their burdens of proving the elements of their [claim]." *Taylor v. Fletcher Allen Health Care*, 2012 VT 86, ¶ 9. This requirement extends to causation where the facts of the case are sufficiently complex. Id. at ¶ 10.

*Undisputed Facts*

In the present case and for the purposes of the present motion, the following facts are not contested. From December 2, 2017 to March 2, 2018, Plaintiff Bruce Kelley was hospitalized at the University of Vermont Medical Center ("UVM Medical Center") for vascular issues with his legs. On February 21, 2018, Plaintiff underwent a complex vascular surgery known as a thoracoabdominal aorta dissection repair at the UVM Medical Center. On Friday, March 2, 2018, the UVM Medical Center released him to a rehabilitation center. Plaintiff was transported and admitted to the Franklin County Rehab Center ("FCRC") the same day at 12:21 pm.

At FCRC, Plaintiff reported that he had back pain from the ambulance ride from UVM Medical Center to FCRC. Later that afternoon, while sitting in a chair, Plaintiff felt the urge to use the bathroom. Before assistance could arise, he became incontinent and soiled himself. Shortly thereafter, Nurse Apley arrived and put him into a hoyer lift to move him from the chair to the bed. Plaintiff claims that Apley improperly positioned him in the hoyer lift, and he experienced pain. After the lift, Plaintiff reported several symptoms including sensations of burning, tingling, and numbness. Later, Nurse Jankowski visited with Plaintiff who complained of his symptoms. Nurse Jankowski sought to make Plaintiff more comfortable, but she did not perform a neurological examination of Plaintiff's legs. She did contact Dr. Marco about Plaintiff's reports of pain and to see if Dr. Marco would prescribe a pain medication. Dr. Marco prescribed Tramadol, which Nurse Jankowski administered in the evening.

Around 11pm, Nurse Perry took over Plaintiff's care. At the time, she became aware of the Plaintiff's complaints. Nurse Perry did not perform a neurological exam. Plaintiff at this time was having trouble clotting his blood. An old IV injection site would not stop bleeding, and in the early hours of March 3, 2018, Nurse Perry arranged a transfer for Plaintiff to the Northwest Medical Center. At the Northwest Medical Center, Plaintiff reported his leg numbness and pain had increased, and he was incontinent. The Northwest Medical Center staff, after consultation with UVM Medical Center, had Plaintiff transferred back to UVM Medical Center where he was re-

admitted for vascular services at 12 pm on March 3, 2018. After further review and an MRI, the UVM Medical Center physicians determined that Plaintiff was, in fact, suffering a subdural hematoma, neurological and not vascular issue. UVM Medical Center's neurological team then scheduled an emergency surgery that began at 11pm that day and finished around 4 am. Despite the surgery, Plaintiff has become permanently paralyzed from the point of the navel on down. He is incontinent, has no motor function in his legs, and has no sensation below his navel.

*Legal Analysis*

Defendant's argument is straightforward and succinctly made. Plaintiffs have disclosed three expert witnesses, Kristin Husher, R.N., Dr. Clifford Eskey, M.D., and Dr. Jacob Rachlin, M.D. None of these three experts through their written opinions or depositions have stated or provided an opinion that the hoyer chair incident on March 2, 2025 caused Plaintiff's paralysis, and none of the three have linked any failures to perform a neurological exam on the part of FCRC or its staff to different potential outcome for Plaintiff's surgery. This second point is worth unpacking. Plaintiff alleges that NCRC and Nurses Jankowski and Perry were negligent because they failed to follow up on Plaintiff's subjective complaints. Plaintiffs do not allege that these subsequent failures, including Dr. Marco's failure to examine Plaintiff caused his injuries. Instead, the allegation is that these failures to test took away both critical neurological information and delayed elevating Plaintiff's issues to a proper neurological specialist.

The problem with Plaintiffs' theory on this second point of liability is that none of their experts can testify that these failures resulted in either a worsening harm or different outcome for Plaintiff. Ms. Husher's opinion was that each of the nurses breached their duty of care to Plaintiff by failing to assess and monitor his worsening neurological condition. While this opinion establishes the alleged duty of care and breach, it does not opine that these breaches, which were effectively delayed reporting caused Plaintiff to incur a different or worse outcome. Beyond Ms. Husher, neither Dr. Eskey and Dr. Rachlin can state with any degree of certainty that any neurological observations that FCRC's employees could have rendered would have altered the outcome. While both doctors note that the earlier a neurological issue is identified, the better the outcome, there is no specific evidence or opinion the nurses' failure to examine, and report, caused a separate harm that would render them liable to Plaintiffs as joint tortfeasors.

For these reasons, the Court finds that Defendants Jankowski and Perry are entitled to summary judgment in full and Defendants FCRC and Apley are entitled to summary judgment in part concerning the claim of liability for failure to conduct neurological exams or perform the corresponding reporting as Plaintiffs have not put forward credible expert opinion that would causatively link these failures to either Plaintiff's hematoma or a objectively worse outcome from the ensuing surgery and treatment that Plaintiff received subsequent to leaving FCRC.

As to Plaintiff's first theory of liability, Plaintiffs' primary filings provide a great deal of smoke but very little substance that would provide a causative link between the hoyer chair incident and the hematoma. Ms. Husher does not offer an opinion about the hoyer chair incident other than to opinion that FCRC and Nurse Apley had a duty to properly seat Plaintiff in the chair and that based on Plaintiff's report of how the chair straps were situated and the pain felt, FCRC and Apley breached this duty. Ms. Husher does not opine whether this breach in technique caused the subdural hematoma or the resulting harm. Similarly, Dr. Eskey and Dr. Rachlin do not opine about whether the hoyer chair incident caused the hematoma or exacerbated it. Much of Plaintiffs' case on causation relies on Plaintiff's own testimony that he was not in pain prior to the hoyer chair incident and was in pain during the lift and then began to experience the loss of functions in the hours after the incident.

The problem with relying on Plaintiff's subjective complaints is that the record indicates that Plaintiff's medical condition is particularly complex. By March 2, 2018, Plaintiff had spent three months hospitalized for vascular issues in his legs. He had undergone a major surgery less than a week before the incident, and he was having trouble using his legs at the time and complaining of pain in them as a result of the ambulance ride from the hospital. There was even evidence tending to show that the blood from the hematoma was several days old, which would have put the cause of the hematoma to a point prior to Plaintiff's admission to FCRC. From this complicated medical history with any number of potential or causal factors lurking in his history, causation may only be established through expert testimony.

While none of Plaintiffs' retained experts have offered an opinion linking the hoyer chair as either the but for or proximate cause of Plaintiff's injuries, Dr. Bruce Tranmer, the neurosurgeon who operated on Plaintiff to relieve the hematoma on the evening of March 3, 2025, has offered an

Entry Regarding Motion                                                                                    Page **5** of **8**
21-CV-00323 Bruce Kelley, et al v. Franklin County Rehab Center, LLC d/b/a Franklin County Rehabilitation Center
and d/b/a Franklin County Rehabilitation & Adult Care Center, et al

opinion to this effect.[2]  Dr. Tranmer, who was deposed on July 19, 2024, stated several times that he had formed an opinion as a neurosurgeon that the cause of Plaintiff's hematoma and the cause of his paralysis arose from the hoyer chair incident.  On page 46 of the deposition, Dr. Tranmer succinctly states:

> I think there are two factors involved.  One, in that, looking over all the record, that it's—that's—that, more likely than not, I believe that something happened that evening at—at the nursing home.  The history is – it's repeated over and over.  And the other factor is that he was anticoagulated and that would aggravate the situation.  So those two factors, more likely than not, in my opinion—started the whole process or was the—the cause.

Tranmer Depo. at 46, 9–19 (Jul. 19, 2024).  Later Dr. Tranmer states in response to questions from Plaintiffs' counsel:

> Q.      And that's your opinion that it likely occurred during the Hoyer lift?
>
> MR. SHAHI:    Objection to form.
>
> A.      I'm not sure how certain I was back then, what degree of certainty that I would have discussed with them or how—I don't know.  I can't remember having that specific conversation with them.
>
> Q.      Right.  But based on your review of the entire record in preparation for today's deposition, that is your opinion, correct?
>
> MR. SHAHI:    Objection to form.
>
> A.      I think, more likely than not, something happened that night that—that started all of this, yes.
>
> Q.      During the Hoyer lift?
>
> A.      Yes.

---

[2] It is unclear why Dr. Tranmer's deposition was not included in Plaintiffs' initial filings or disclosed during the normal course of briefing.  The deposition occurred six months prior to the motion for summary judgment, and it appears to have been available to the parties as early as October 2024.  Yet, this deposition was not referenced or included in any of the more than 100 pages of filings submitted by Plaintiffs prior to August 1, 2025.  Plaintiffs' filings are choked with irrelevant references, characterizations, and confusing references to the record that fall both outside of the scope of the present motion and require the Court to effectuate a scavenger hunt through the records to piece together and confirm the various references, not all of which are accurately cited.  This is a task that the Court is not obligated to undertake.  *Travelers Inc. Co. v. Demarle, Inc., USA*, 2005 VT 53, ¶ 9.  Normally, the Court would not permit such 11th hour briefing, but in this case, the Court has permitted sur-replies, and it permits the late inclusion of Dr. Tranmer's deposition.

Tranmer Depo. At 52, 2–17.

Even after several efforts by FCRC's counsel to dislodge Dr. Tranmer from his opinion, he states:

> I've said it so many times today. I believe that he suffered the neurological deficit sometime in the evening of March the 2nd.

Tranmer Depo. at 92, 2–4.

Based on Dr. Tranmer's opinion, the issue of causation is less straightforward that FCRC argues. Plaintiffs can rely on Dr. Tranmer's opinion for purposes of summary judgment as a basis for the element of causation. Dr. Tranmer's opinion is that the hoyer chair was a primary cause of Plaintiffs' hematoma, which led to his paralysis. Under this opinion, but for FCRC and Nurse Apley's negligent seating of Plaintiff, he would not have incurred the hematoma, which led to his paralysis. Whether Dr. Tranmer's opinion holds up to cross examination or is found credible is a matter for a fact finder and lies beyond the scope of the present motion.

For this reason, the Court finds that there is a disputed issue of fact on this issue of whether the improper hoyer chair seating caused Plaintiff's injuries. Plaintiffs have, through the testimony and opinion of Dr. Tranmer provided sufficient evidence to meet the threshold of this burden, and the matter has become an issue of disputed fact for a jury to resolve. The motion for summary judgment against FCRC and Nurse Apley is denied based on the disputed facts surrounding the issue of causation and the improper seating in the hoyer chair.

### Dr. Marco's Motion to Join the Present Motion

Dr. Marco has filed a motion to join the present motion for summary judgment on the basis that his liability regarding the post-hoyer chair is identical and premised on the same causative issues as FCRC and the individual nurses. The Court agrees that Dr. Marco's liability arises primarily from whether his alleged negligence, namely not seeing Plaintiff following reports of pain numbness after the improper hoyer chair lift and failing to direct the nurses to monitor Plaintiff's neurological responses caused Plaintiff's injuries. This liability, for purpose of the present motion, is nearly identical in that the same salient question applies. Can Plaintiffs show that Dr. Marco's failures caused his paralysis. As with the nurses, Plaintiffs' experts do not offer an opinion that creates a dispute issue of fact on this question. Dr. Eskey and Dr. Rachlin cannot state with any degree of certainty that Dr. Marco's actions caused Plaintiffs' paralysis.

For this reason, Dr. Marco's motion to join the present motion is granted, and summary judgment is granted to Dr. Marco.

## ORDER

Based on the foregoing, Defendants' Motion for Summary Judgment is **Granted in part** to FCRC on the issue of FCRC and Nurses Jankowski and Perry's alleged negligence for lack of evidence of causation of Plaintiff's eventual paralysis. The Court finds that there is insufficient evidence of causation to link these acts and omissions to the eventual paralysis as required under but for causation. *Wilkins*, 2005 VT 121, at ¶¶ 12–14. Nurse Jankowski and Nurse Perry are dismissed as parties to the present litigation.

FCRC and Nurse Apley's portion of the Motion for Summary Judgment concerning the hoyer chair is **Denied** as there is a disputed issue of fact as Dr. Tranmer's deposition satisfies Plaintiffs' threshold obligation to produce expert opinion of whether the hoyer chair incident caused the hematoma and resulting paralysis. Given this factual dispute, summary judgment is improper at this time.

Finally, Dr. Marco's Motion to Join the Motion for Summary Judgment is **Granted**. He is also **Granted** summary judgment on the issues of failure to treat and monitor Plaintiff during the evening of March 2, 2018 as there is not evidence that this failure created "but for" causation that led to Plaintiff's paralysis.

The Court shall schedule this for a status conference to determine what issues remain in this matter, whether mediation has occurred, and whether the matter is ready for trial.

Electronically signed on 8/17/2025 11:39 AM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge